RANSOM CHATFIELD *vs.* GEORGE B. BUNNELL AND GEORGE C. PETERSON.

Third Judicial District, New Haven, June Term, 1897. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERLSEY AND HALL, Js.

The plaintiff, a deputy sheriff, having for service a writ of attachment against one *P*, an actress, in which the defendants and *C* were garnishees, went to the theater where *P* was then acting, and took certain bank bills from the box-office, where *X*, one of the defendants, was selling tickets. The plaintiff, at the instigation of the defendants, was thereupon prosecuted for stealing $17 of their money, but acquitted. Upon a trial for malicious prosecution, the plaintiff claimed and testified that he left a copy of the writ with *X* and attached $12 in bills which he found in the box-office, as the property of *P*. The defendants offered evidence to prove that no money was taken when the copy was left with *X*, but that afterwards the plaintiff stealthily returned, thrust

his hand through the window, and seized and took away a pile of bills. The parties were at issue as to the amount and ownership of the money taken, and the defendants, for the purpose of showing that they had probable cause to believe that the money was theirs, and that the amount was $17, offered to prove their system of handling and distinguishing the receipts of the box-office, a portion of which belonged to them and a portion to third parties. *Held* that the trial court erred in excluding this evidence.

Where the record fails to disclose the cause of an objection to certain evidence, a ruling excluding it will be upheld if there is any ground upon which it can be supported.

The defendants offered evidence to prove that the plaintiff voluntarily surrendered and was not actually arrested at all, but the court excluded it upon the ground that the plaintiff made no claim for damages except for the ignominy and disgrace of the prosecution. *Held* that the evidence was admissible in mitigation of damages.

The plaintiff testified that while he did not know, he supposed and believed the money he took from the box-office belonged to *P*. *Held* that this testimony was properly received.

On cross-examination the plaintiff was asked whether he did not understand, when he left the garnishee process with *X*, that if *X* then had any money of *P* in his hands, the garnishment tied it up. *Held* that this inquiry was proper and should have been allowed.

A witness cannot testify in gross as to the similarity of separate and distinct conversations with different persons, on the same subject.

A motion for a new trial for a verdict against evidence, under Chap. 51 of the Public Acts of 1893, should be addressed to the Supreme Court of Errors. In passing upon such a motion great weight is due to the action of the trial court in denying a similar motion filed immediately after the rendition of the verdict; and it is only in a clear case that this court, under such circumstances, will feel justified in coming to a different result.

[Argued June 8th — decided July 13th, 1897.]

Action for malicious prosecution, brought to the Superior Court in New Haven County and tried to the jury before *Thayer, J.;* verdict and judgment for the plaintiff for $900 damages, and appeal by the defendants for alleged errors in the rulings of the court. The defendants also moved for a new trial for a verdict against evidence. *Motion for a new trial denied; error on the appeal and a new trial ordered.*

The finding showed the following facts: Upon the trial the plaintiff offered evidence to prove and claimed to have proved, that on the 10th day of May, 1895, he was a deputy

sheriff of New Haven county, and that he then had in his
hands for service as such officer a lawful writ of attachment
against one Jean Pardee, wherein the defendants and John
Clark were named as garnishees; that said Pardee was an
actress then playing an engagement at the Hyperion Theater
in New Haven; that said Bunnell, one of the defendants,
was manager of said theater, and that the defendant Peter-
son was the treasurer thereof, and as such sold tickets at the
box-office for admission to said theater; that the plaintiff, on
the evening of said day at about eight o'clock, began the ser-
vice of said process by leaving a duly attested copy thereof
in the hands of said Peterson in said box-office, and by at-
taching $12 in bank bills, which he found there, as the prop-
erty of said Pardee; and that later in the evening he left
like copies with the other garnishees at the theater, and after-
wards duly completed the service of said writ and returned
it to the court to which it was returnable; that after he had
so served said writ upon the garnishees said Bunnell caused
him to be arrested and detained without warrant, in said
Bunnell's private office at said theater, and threatened to
have him prosecuted; and that later, on the 14th day of
June, 1895, the defendant maliciously caused him to be pros-
ecuted before the City Court of New Haven on the charge
of theft, by making complaint to Mr. Matthewman, the city
attorney, and charging the plaintiff with that crime, and that
he was afterwards arrested and tried on said charge and
acquitted.

The defendants offered evidence to prove and claimed to
have proved that the plaintiff did not attach said money at
the time he left the copy with Peterson, but that having left
the copy he departed from the box-office, and after sometime
returned stealthily from one side of the box-office, thrust his
hand through the window and seized the package of bank
bills which was lying upon the shelf, and made off with the
money, leaving no further papers with Peterson, and giving
no explanation of the act; that later in the evening when
Peterson made up his accounts he found $17 discrepancy;
that the plaintiff was not detained nor arrested at the thea-

ter that evening, and that the defendants took no action in
the matter until after the suit against Miss Pardee had been
tried by the justice before whom it was returnable, because
they expected that by the determination of that suit the
money taken by the plaintiff would be returned to them;
that shortly after the justice trial, they not having been
called upon to disclose, and the money not having been re-
turned to them, they went to the late Tilton E. Doolittle,
then State's Attorney, in order to ascertain their rights, and
were by him referred to Mr. Matthewman, and that to him
they made a fair and impartial statement of all the facts,
and stated to him that they had come for the purpose of
finding out their rights; that said Matthewman character-
ized the plaintiff's act in taking the money as a theft, and
caused the plaintiff to be prosecuted for that crime, and
that the defendants had no other part in said prosecution
except to appear when lawfully summoned before said City
Court to testify their knowledge of the transaction.

The plaintiff, in testifying to the occurrences at the thea-
ter, testified that at the time he left the copy with Peterson
the latter disclosed that he was not then indebted to Jean
Pardee, and that he had previously been served with other
papers; and also testified that the defendant Bunnell claimed
that the money taken was his, and that the other garnishee,
Clark, claimed that it was his. The defendants called Mr.
Peterson as a witness, and the following question was put
to him: "Will you state to the jury, please, the method, or
whether there is any difference at all in the manner in which
the receipts from the shows are handled by you?" The ques-
tion was objected to by the plaintiff's counsel as irrelevant,
immaterial, and incompetent. Counsel for the defendants
claimed it upon grounds stated by him as follows: "Your
Honor will observe that there is a discrepancy: the amount
taken was $12. Your Honor has heard the statement made
and the claim on our part that the amount taken may have
been $17, and we think we have a right to show why it
was that Mr. Peterson made that amount seventeen instead
of twelve, and that we can only do by showing to the jury

the method of handling the receipts, and what became of them in that house. As a matter of fact our claim is that that night when he came to balance his cash there was a discrepancy of $17. Now, further, a claim was made by Mr. Bunnell that night, that that money was his and not Jean Pardee's. Now, that the jury may understand how it was that one could claim it, and another could claim it, our claim is that we ought to be permitted to show to this jury that for a certain class of shows Mr. Peterson, as the agent for Mr. Bunnell, handles all the money; on the other hand, for a class of entertainments for Mr. Bunnell in which Mr. Bunnell rents his house, Mr. Peterson becomes the agent of the parties renting it, and is then not the agent of Mr. Bunnell. Then, further than that, I desire to show that on this night in question he was selling tickets for a class of entertainments in which Mr. Bunnell was entitled to handle all his receipts through his agent, Mr. Peterson, and he was also selling tickets for other shows in which Mr. Peterson was not his agent at all, but the agent of other people. This jury cannot understand this fully unless he is permitted to testify in relation to the handling of these receipts: whose they were on the night in question." The objection was sustained.

The defendant Bunnell was called as a witness for the defense, and the following question was asked him by defendants' counsel: "Isn't it true, Mr. Bunnell, that when Mr. Peterson is selling tickets for three shows at a time, it is impossible for you to tell, without consultation with Mr. Peterson, to whom the money belongs when it is received there?" The question was objected to as irrelevant and immaterial by plaintiff's counsel, and the objection sustained.

The plaintiff had testified that before serving the copy upon Peterson, he had watched the box-office on the evening of May 10th, 1895, and seen persons purchase tickets and pass along into the theater. The defendants, for the purpose of showing that none of the money received at the box-office for tickets sold for the entertainment upon that night, belonged to Jean Pardee, or her assignee, John Clark, and for the purpose of showing that payment had already been made

to Clark, asked the witness Peterson the following question:
" Why did you not owe him (Clark) that night?" The
question was objected to by the plaintiff's counsel and the
objection sustained.

The plaintiff, to prove that he was arrested, tried and dis-
charged, offered testimony of the captain of police of the city
of New Haven, with the record book of arrests kept in the
police office, and the testimony of the clerk of the City Court
of New Haven, with the files and records of that court. By
these records it appeared that the warrant was served and
the plaintiff arrested by Henry D. Cowles, sergeant of police.

The defendant called said Cowles as a witness, and for the
purpose of proving that before he had time to serve the war-
rant, after it had been placed in his hands, the plaintiff ap-
peared at headquarters and gave himself up, he was asked by
their counsel the following question: " Now you say the war-
rant was given to you: did you arrest Chatfield?" The plain-
tiff's counsel objected to the question on the ground that
the plaintiff made no claim for damages on account of any
ill-treatment, harshness, or physical injury in making the
arrest, but only for the ignominy and disgrace brought upon
the plaintiff by the malicious prosecution. The objection
was sustained.

The plaintiff offered evidence to prove and claimed to have
proved that the defendants, when they went to city attorney
Matthewman, stated to him that the plaintiff had stolen $17
from the box-office at the Hyperion, and that they had come
to him to get satisfaction. The defendants claimed and of-
fered evidence that they did not make such statement, but an
essentially different one ; and that said Cowles was present
when the statement was made. Cowles, having testified as
to the statement made in his presence to Matthewman, was
asked by defendants' counsel the following question, for
the purpose of showing that they had made the same state-
ment to him in the absence of Matthewman: " I want to
know whether they made the same statements to you they
made to Mr. Matthewman ? " This question was objected to
in behalf of the plaintiff, and the objection sustained.

The plaintiff, upon cross-examination by counsel for the defendants, was asked whether on May 10th, when he took the $12, he knew to whom it belonged. To this inquiry he replied that he then supposed that it belonged to Miss Pardee. This answer was not objected to, but the question was repeated, and the witness being required to give a direct answer, answered " No." On his re-direct examination by his counsel he was asked the following question : " Now, you were asked with regard to this $12 in money that you took there at the theater on the night of May 10th, and you were asked if you knew that it belonged to Miss Pardee. Did you believe that it belonged to her ? " Counsel for the defendants objected to this question, but the objection was overruled. The answer of the plaintiff to this question was, " I did, yes."

The plaintiff testified that in serving the copy of the Pardee writ upon Peterson, he reached through the window of the box-office and handed the copy to Peterson, and that in withdrawing his hand he took the $12 which he saw upon the shelf, and stated to Peterson that he attached it. Upon cross-examination, counsel for the defendants asked him : " Didn't you understand, Mr. Chatfield, when you put that writ in Mr. Peterson's hands, that if he had in his hands any money belonging to Jean Pardee when you did it, it tied that money up in his hands ? " This question was objected to as irrelevant, immaterial and incompetent, and the objection was sustained.

*Lynde Harrison* and *Edmund Zacher*, for the appellants (defendants).

*Charles S. Hamilton*, for the appellee (plaintiff).

BALDWIN, J. Upon the trial in the Superior Court, it was not disputed that the plaintiff was prosecuted for a theft of $17 from the defendants, in consequence of a complaint made by them to the city attorney of New Haven, and that he was acquitted of the charge. In order to make out his

case, he was bound to show that they acted from malice, and he asked the jury to infer this from the fact (among others) that they knew he took the money under a claim that he had attached it, on a writ against an actress, named Pardee, in which they, and also one Clark, had been made garnishees. The defendants denied that it was her property; and it appeared that it consisted of certain bank bills taken in by Peterson, one of the defendants, for tickets sold by him as treasurer of an opera house belonging to Bunnell, the other defendant, at the box-office, on a night when Miss Pardee was taking part in a play upon the stage. The plaintiff introduced evidence that he began the service of the writ by leaving a copy with Peterson, as a garnishee, and taking possession of $12 in bills which he found in the box-office, stating at the same time to Peterson that he attached it; that Peterson then disclosed that he was not indebted to Miss Pardee; and that the bills were claimed by Bunnell as his property and also by Clark as his. The defendants introduced evidence tending to show that the plaintiff went away after leaving the copy with Peterson, and then, some time later, came back stealthily, thrust his hand through the window of the box-office, seized the bills, without any word of explanation, and made off with them; and that when Peterson afterwards made up his accounts for the evening's sales, he found that $17 was missing. Peterson was then asked as a witness in their behalf, to state the method in which he handled the receipts from the different classes of shows for which he sold tickets; their claim being that as to one class, he acted as the agent of the defendant Bunnell, but as to another, as the agent of outside parties, who hired the opera house for the night; that on the night in question he was selling tickets for shows of each class; and that it would appear from his answer how they had come to the result that the sum taken by the plaintiff was $17, instead of $12, as claimed by him. Bunnell was also asked by his counsel whether it was possible for him to tell to whom the receipts at the box-office, at any night, belonged, without consultation with Peterson, when the latter had been selling tickets for three different shows.

In determining whether the defendants had probable cause for believing that the plaintiff stole $17 of their money, among the proper subjects of inquiry would be how much money was taken, and whether it was or was not believed by them to be theirs. If Peterson's position was such as to make him accountable to Bunnell for certain receipts, and to third parties for other receipts, according to the class of show, for which he might sell tickets, and he only could tell what kind of tickets he had sold on any particular night, these were facts which the defendants had a right to bring out in testimony. There was error, therefore, in excluding each of these questions.

The plaintiff testified that before serving his writ he saw persons buy tickets from Peterson, and then pass into the theater, and it appeared that Miss Pardee had assigned her interest in the receipts to Clark. The defendants claimed that all that was due to Clark had been paid, prior to the attachment, and for the purpose of showing this asked Peterson why he did not owe Clark, that night, which question was excluded. The cause of objection is not stated upon the record, and the ruling is therefore to be upheld, if there is any ground upon which it can be supported. The question was obviously a leading one, unless the witness had already testified that he did not owe Clark, and as the finding does not show that any such testimony had been given, it follows that the record discloses no error in its exclusion.

The plaintiff having produced record evidence of his arrest, as alleged in his complaint, upon the prosecution for theft, the defendants offered evidence that he voluntarily surrendered himself to the officer who had the warrant, and was never really arrested at all. Objection was made and sustained to this evidence, on the ground that the plaintiff made no claim for damages for any ill-treatment, harshness, or physical injury in making the arrest, but only for the ignominy and disgrace brought upon him by the prosecution. The defendants' exception to this ruling is well taken. They could fairly make claim that less of ignominy and disgrace was incident to a prosecution in which the plaintiff was not subjected to an

actual arrest, than to one in which his person was taken into the custody of an officer, and the testimony which the question asked was calculated to elicit would have been entitled to consideration in mitigation of damages.

The plaintiff testified on cross-examination that he did not know when he took the money that it belonged to Miss Pardee, though he supposed it did. On his re-direct examination he was asked whether he believed it to be hers, and replied in the affirmative. This question was properly admitted. While he was not on trial for theft, he had the burden of proving that the defendants had charged him with that offense without probable cause. His admission that he took the bills without knowing that they were Miss Pardee's property, might have been used against him in the argument to the jury with more effect, had he not been allowed to explain it, by affirming his belief in her title.

The plaintiff was asked on cross-examination whether he did not understand, when he left the copy with Peterson, that if the latter then had any money of Miss Pardee's in his hands the garnishment tied it up. This question was erroneously excluded. If he did understand such to be the law, he must also have understood that his subsequent seizure of the money in Peterson's possession was improper, and it was a legitimate argument to address to the jury, that, under such circumstances, he took it not under his writ, but as a mere wrong-doer, whom ordinary men, who had not had a legal education, might well suppose to occupy the position of a thief.

The sergeant of police who heard the defendants' statements to the city attorney (as to the nature of which there was contradictory evidence), was asked by their counsel whether they had made the same statements to him. This question was properly excluded. A witness cannot thus be allowed to testify in gross as to the similarity of separate and distinct conversations with different persons, on the same subject.

The defendants, upon the rendition of the verdict, moved in the Superior Court to have it set aside, on the ground that it was against the evidence. After due consideration

this motion was denied, a few days later, whereupon, and within six days after judgment, they filed a similar motion, to obtain the same relief from this court, under the Act of 1893 (Public Acts of 1893, Chap. LI, p. 228). It was informally drawn, being simply entitled by the caption in the cause in the Superior Court, and not addressed, as it should have been, to this court. Passing by this defect, however, we are of opinion that the verdict was not so palpably contrary to the evidence before the jury as to require us to grant a new trial upon this motion. In the determination of this question, great weight is due to the action of the trial court, in denying the original motion filed immediately upon the conclusion of the trial, when the whole case was fresh in its recollection. Its decision did not, indeed, preclude the defendants from bringing the case here upon another motion to the same effect; but it is only in a clear case that, under such circumstances, we should feel justified in coming to a different result. *Bissell* v. *Dickerson*, 64 Conn. 61, 72; *Johnson* v. *Norton*, ibid. 135.

The motion to set aside the verdict as against evidence, is denied; but there is error on the appeal, and upon that a new trial is ordered.

In this opinion the other judges concurred.