FANNIE THIBODEAU, ADMINISTRATRIX (ESTATE OF
ROGER THIBODEAU) *v.* THE CONNECTICUT
COMPANY ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued April 3—decided May 20, 1952

*Snow G. Munford,* for the appellants (defendants).

*A. Arthur Giddon,* with whom, on the brief, were *Morton E. Cole* and *Cyril Cole,* for the appellee (plaintiff).

INGLIS, J. In this action for the wrongful death of a ten-year-old boy, the jury returned a verdict for the plaintiff. From the judgment rendered thereon the defendants have appealed, assigning error in various rulings on evidence and in the charge.

The plaintiff claimed to have proved the following facts: On the north side of Burnside Avenue in East Hartford, near a bus stop of the defendant company, were three driveways entering upon a large open area used as a turnabout space for the defendant company's busses. The area had a surface composition of earth with blue stone crushed into it. A public road extended northerly from the east and center entrances. There was a standard highway stop sign at the center entrance, and the entire area had the appearance of an open public roadway.

On the morning of September 9, 1950, one of the company's busses, operated by the defendant Czellecz, turned into the area through the center entrance and came to a stop facing in a westerly direction. About that time, the plaintiff's decedent rode his bicycle into the area and stopped at a point behind and to the right of the bus. Suddenly the bus backed, cutting to its right in an arc, and struck and ran over the boy, killing him instantly. The company had promulgated a rule that its operators should not back their busses "if possible to avoid doing so." About the time of the accident, it was the practice of some bus operators to leave the area by way of the west exit, thereby avoiding the necessity of backing, and there was no physical obstacle to prevent their doing so. If the operator of the bus had kept a proper lookout, he could easily have seen the deceased before striking him. The boy's death was a result of the negligence of the defendants.

The defendants' claims of proof pertinent to the issues on this appeal are the following: The bus operator had kept a proper lookout, but in spite of that he had not seen the boy until after the collision. The instructions from the Connecticut Company to its operators with reference to using the turnabout area were to enter it, face west, then back up in a generally northeast direction and drive out through the center entrance. The turnabout area was private property owned by Case Brothers, Inc. It had been used by the Connecticut Company for at least nine years. The company had made repairs to the surface of the area about twice a year and had caused snow to be removed from it in winter. The town of East Hartford had done nothing to keep it in repair. At the time of the accident it was deeply rutted. It did not have the appearance of a public road.

The defendants claim error in six rulings on evidence. One of them was the exclusion of a question propounded by the defendants on the cross-examination of Peter Norman: "Do you own this house you live in?" Before objection could be made the witness answered "No." The witness' wife had testified earlier that she had given the Connecticut Company permission to use her property and that she had no objection to its busses going over her property so that they might go out through the west entrance without backing. The defendants claimed the excluded question on the ground that the answer to it would show that Mrs. Norman had nothing to say about the use of the property. The question clearly was irrelevant for that purpose. The fact that Mr. Norman did not own the property was not evidence that his wife did not own it.

At another point in the trial, Raymond Ransom, superintendent of the defendant company, was asked: "Does your company have permission from Case Bros. to use this area?" The question was ruled out. If the defendants were trying to prove that the company had either a license or an easement to use the property, the proper way would have been to produce the written agreement, if there were any, or to ask for the conversation in which they claimed the license or easement had been granted. To ask whether "permission" had been given called for a conclusion on the part of the witness. The question, therefore, was improper. *Morache* v. *Greenberg,* 116 Conn. 549, 550, 551, 165 A. 684; *Swayne* v. *Felice,* 84 Conn. 147, 150, 79 A. 62; *Chatfield* v. *Bunnell,* 69 Conn. 511, 520, 37 A. 1074; *Young* v. *Newark Fire Ins. Co.,* 59 Conn. 41, 46, 22 A. 32. The same witness was also asked what the company had done with respect to the condition of the turnabout area during

the past nine years. The question was claimed for the purpose of establishing that the company had permission from Case Brothers to use the space. If it is assumed that the answer would have been that the company had made repairs to the surface of the area, that, without more, would not constitute evidence that Case Brothers had granted an easement or license. The question was properly excluded as irrelevant.

The fourth ruling claimed as error was the sustaining of an objection to a question asked by the defendants of the vice president of Case Brothers, Inc. The question was: "Was any permission given the Connecticut Company for the use of this turnabout area by you . . . ?" Both because there had been no evidence to establish the witness' authority to act for his company in the granting of any permission and because the question was leading in form, the objection was properly sustained. The fifth ruling questioned by the defendants is the trial court's refusal to allow a question propounded to the superintendent of streets in East Hartford as to the surface conditions of the public streets in that town. The avowed purpose of the question was to show that the surface of the turnabout did not resemble that of public streets. The court was warranted in excluding it on the ground that it was too remote.

The sixth claim of error in rulings on evidence is based upon the admission of a photograph of the plaintiff's decedent as he lay on the ground immediately after the bus had run over him. It is a gruesome picture and the defendants objected to its admission on the ground that it would prejudice the jury. It, however, portrays several facts that were relevant in the case. It showed that the boy was

wearing light-colored clothes. It also showed the position of the boy and his bicycle when he was struck. When evidence such as a photograph is offered the tendency of which may be to prejudice the jury, its admissibility lies in the sound discretion of the court. It may be admitted if its value as evidence outweighs its possible prejudicial effect. *Cavallaro* v. *Welch,* 138 Conn. 331, 334, 84 A. 2d 279; *Baxter* v. *Chicago & Northwestern Ry. Co.,* 104 Wis. 307, 325, 80 N.W. 644; *Cooper* v. *St. Paul City Ry. Co.,* 54 Minn. 379, 383, 56 N.W. 42; 3 Wigmore, Evidence (3d Ed.) p. 185, § 792(2); 4 id., p. 259; 20 Am. Jur. 609, § 729. In the present case, we cannot say that the trial court abused its discretion in admitting the photograph.

The first complaint made by the defendants concerning the charge is that it contained no instruction that, "while there was no physical obstacle to prevent the bus operator from continuing on and out the west exit, there were legal restrictions and prohibitions to prevent the bus from continuing out the west exit." The defendants' claims of proof do not indicate that there was any evidence to prove the legal restrictions referred to. This is a sufficient answer to their contention.

The sole remaining assignment of error is that the court failed to comply with five of the defendants' requests to charge. One of these requests related to contributory negligence. That matter was fully and accurately covered in the charge as given. The gist of the other four requests was that, if the jury found that the company used the Burnside Avenue land under a grant or a license from the owner and that the plaintiff's decedent was unlawfully using the land, then they should not find that the company was under a duty not to injure the boy

unless they first found that the company knew or was chargeable with knowledge of the likelihood of persons trespassing on the property, and, even if they did find that latter fact, then the only duty owed by the company was to avoid causing injury by wilful and wanton acts. By these requests the defendants apparently were attempting to invoke the rule laid down in *McPheters* v. *Loomis,* 125 Conn. 526, 533, 7 A.2d 437, that one using land under a grant or a license from the owner owes only the same duty to a trespasser as the landowner himself. These requests did not correctly state the duty of a landowner to a trespasser because they limited it to the avoidance of injury by wilful and wanton acts. *Kakluskas* v. *Somers Motor Lines, Inc.,* 134 Conn. 35, 42, 54 A.2d 592; *Shiembob* v. *Ringling,* 115 Conn. 62, 64, 160 A. 429. That aside, the requests were unwarranted. The claims of proof do not disclose that the defendants had any license from the owner of the area or any easement therein which gave them a right to use it. Without such a claim of proof the instructions requested were not relevant to the issues before the jury. The refusal of the requests was, therefore, justified. *Mavrides* v. *Lyon,* 123 Conn. 173, 174, 193 A. 605; *Riley* v. *Connecticut Co.,* 129 Conn. 554, 557, 29 A.2d 759.

There is no error.

In this opinion the other judges concurred.