PRIDEMARK CUSTOM PLATING,
INC., Plaintiff-Appellee,

v.

The UPJOHN COMPANY, INC.,
Defendant-Appellant.

MICHRIS, INC., Plaintiff-Appellee,

v.

The UPJOHN COMPANY, INC.,
Defendant-Appellant.

Court of Appeals of Tennessee,
Western Section, at Jackson.

July 29, 1985.

Application for Permission to Appeal
Denied Nov. 25, 1985.

Henry T.V. Miller, Memphis, James L. Fetterly, Minneapolis, Minn., for plaintiffs-appellees.

J. Brooke Lathram, Memphis, Richard Josephson, Houston, Tex., for defendant-appellant.

CRAWFORD, Judge.

In these two cases consolidated for the purpose of trial, one defendant, the Upjohn Company (hereinafter referred to as Up-

john) appeals from the judgments of the trial court on jury verdicts in favor of plaintiffs, Pridemark Custom Plating, Inc. (hereinafter referred to as Pridemark or plaintiff) and MiChris, Inc. (hereinafter referred to as MiChris or plaintiff). The jury returned a verdict for each plaintiff for compensatory damages and a joint verdict of $1,500,000 for punitive damages which was not allocated between the plaintiffs. The jury held for the co-defendant, C.E. Preston, Inc., and no issue is presented for review in this regard.

In 1974, MiChris began construction of an all metal building to be occupied by a metal electro-plating business. Although a general contractor was used for the building construction, MiChris undertook to handle the insulation directly with the insulation contractor, Preston. The building was substantially completed in July, 1975. It was consumed by fire in August, 1980, at which time the building was still owned by MiChris and occupied by its tenant, Pridemark, conducting the electro-plating business.

On May 21, 1981, both plaintiffs filed suits against Upjohn and the insulation contractor, Preston. Pridemark sought damages for losses to its business and for its property located in the building, and MiChris asked for damages for the building and income losses. Both plaintiffs sued for punitive damages.

The complaints allege: that Upjohn is engaged in the business of manufacturing cellular plastic polyurethane spray-on insulation material to be used for interior insulation; that Preston is in the business of marketing and applying various types of such insulation; that in March, 1975, plaintiff, MiChris, purchased from Preston insulation manufactured by Upjohn for use in the building; and that neither Upjohn nor Preston gave adequate warning as to the propensities of the insulation material to burn rapidly unless it was covered with a thermal barrier material.

The first counts of the complaints are for strict liability in tort and allege that the insulation material was in a defective condition and unreasonably dangerous at the time of its manufacture and sale because when used in certain applications, it could be highly flammable resulting in the extremely rapid spread of flames and combustible gases producing high volumes of lethal toxic smoke and fumes. The second counts of the complaints allege that the defendants were negligent in developing and manufacturing the insulation, in failing to properly warn consumers concerning the various dangerous characteristics of the insulation; for continuing to refer to misleading safety tests previously made on the product; for misrepresenting the true characteristics particularly the fire behavior characteristics of the insulation; for deceiving users regarding the test results by independent testing services; for failing to warn the applicators, dealers and general public of the likely results of the improper use in application of the insulation; for failing to instruct its agents, applicators and dealers concerning the proper method of applying and installing the insulation; and for failing to exercise reasonable and ordinary care in the manufacture, sale and distribution of the insulation. The third counts of the complaints sue for breach of implied and express warranties. The fourth count of the MiChris complaint alleges that Upjohn made express material representations to MiChris with the intent to deceive and that MiChris relied upon these representations. The last counts of both complaints allege that although defendants had knowledge of the dangerous propensities of the product, they willfully, wantonly and in reckless disregard for plaintiffs, concealed the knowledge, failed to warn and continued to promote and advertise the products as being suitable and safe for the purposes intended, and that such conduct constituted malicious, reckless, willful, wanton and intentional disregard for the safety and property of the plaintiffs for which punitive damages should be awarded.

Upjohn's answer joined issue on all material allegations of the complaints and affirmatively averred that its insulation was nei-

ther in a defective condition nor unreasonably dangerous within the meaning of the Tennessee Products Liability Act. As a further defense Upjohn alleged that plaintiffs' misuse of the product constituted an independent intervening cause because such use had not been foreseeable by Upjohn. Upjohn also relied upon the defense of proximate contributory negligence and assumption of risk. By amendments to the answers, Upjohn relied upon T.C.A. § 47–2–725, the statute of limitations for breach of implied and express warranties, T.C.A. § 28–3–202, the statute of limitations for improvements to real property and the plaintiffs' failure to install a sprinkler system in violation of the local building code.

We will now consider the issues presented for review.

Upjohn has not properly phrased the first issue and we have rephrased it as follows:

1. Whether the trial court erred in denying Upjohn's motion for a directed verdict based on the statute of limitations.

Upjohn relies upon T.C.A. § 28–3–202 (1980) providing:

*Limitation of actions.*—All actions to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property, for injury to property, real or personal, arising out of any such deficiency, or for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying in connection with, such an improvement within four (4) years after substantial completion of such an improvement.

Upjohn contends that as the developer and manufacturer of the insulation, it was a party engaged in the "design" of "an improvement to real property" within the meaning of the statute. However, the main thrust of Upjohn's argument is that the statute is applicable because of plaintiffs' contention and proof that an Upjohn

representative was present while the insulation was being installed and that this constitutes "observation of construction" and brings Upjohn within the provisions of the statute. In support of its assertions Upjohn points out that T.C.A. § 29–28–103, a part of the Products Liability Act, mandates the application of the statute to manufacturers such as Upjohn.

On the other hand, plaintiffs contend that 28–3–202 is not applicable to bar their action because Upjohn was a material supplier and not covered by the statute which was passed to protect architects and builders. They argue that "design" as referred to in the statute means the design of the building or a major component and not just one phase of the construction. They further contend that the presence of Upjohn's representative on the site does not rise to the level of "observation of construction" necessary to bring the statute into play. Finally, plaintiffs assert that even if 28–3–202 is otherwise applicable, Upjohn was guilty of fraud and concealment which, according to T.C.A. § 28–3–205(b) prohibits the use of any such defense.

The trial judge agreed with plaintiffs and determined that Upjohn was a material supplier and could not rely upon the statute of limitations of 28–3–202. We find that the statute does not apply based upon two of plaintiffs' other arguments.

T.C.A. 28–3–202 became law in 1965. In 1978, the Legislature passed the Tennessee Products Liability Act which includes 29–28–103 providing:

*Limitation of actions—Exception.*—(a) Any action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought *within the period fixed by* §§ 28–3–104, 28–3–105, *28–3–202,* and 47–2–725, but notwithstanding any exceptions to these provisions it must be brought within six (6) years of the date of injury, in any event, the action must be brought within ten (10) years from the date on which the product was first purchased for use or consumption, or within

one (1) year after the expiration of the anticipated life of the product, whichever is the shorter, except in the case of injury to minors whose action must be brought within a period of one (1) year after attaining the age of majority, whichever occurs sooner. (b) The foregoing limitation of actions shall not apply to any action resulting from exposure to asbestos. (Emphasis supplied).

Because of the specific reference to 28–3–202 in 29–28–103, these statutes are in *pari materia* and must be construed together. *See Coleman v. Acuff,* 569 S.W.2d 459 (Tenn.1978).

The rule of statutory construction to which all others must yield is that the intention of the legislature must prevail. The court's duty is to construe statutes so that no parts become inoperative or insignificant. It must give effect to every word in an act in order to achieve legislative intent and allow no section of a statute to destroy another. In achieving these goals, words utilized in statutes must be given their usual and ordinary meaning. *Plough, Inc. v. Premier Pneumatics, Inc.,* 660 S.W.2d 495, 498–99 (Tenn.App.1983).

■ The products liability statute indicates the intention of the legislature that the time period of four years fixed by 28–3–202 apply to manufacturers furnishing component parts of an improvement to real property if the manufacturer is otherwise within the scope of that statute. It is within this context that we examine Upjohn's assertion that "design" and "observation of construction" as used in 28–3–202 encompass Upjohn's status in the case before us.

■ The proof indicates that Upjohn's polyurethane foam insulation is a product on the market for general use in a variety of situations and was not specifically designed for the building involved in this litigation. We do not interpret "design" as used in the statute to mean the general design of a manufactured product which might be used in improvements to real estate. The meaning of the word is limited to the architectural or engineering design

of a particular building or the particular parts thereof. While we agree with plaintiffs in this regard, the question of whether T.C.A. § 28–3–202 applies because of "observation of construction" by the Upjohn representative presents a different issue.

■ The usual and ordinary meaning of the words "observation of construction" used in 28–3–202 and interpreted in the context of both statutes indicates the legislature intended to make the four-year time period set out in 28–3–202 applicable to manufacturers who observe the application of their products in "the improvement of real property." Inclusion of the reference to 28–3–202 in 29–28–103 requires such a conclusion. Putting the manufacturer who observes the installation and integration of its products into the construction of buildings in the same category as an architect and the builder is a reasonable construction of the statute. We hold that the manufacturer or seller of a product installed in and becoming a part of the real property in connection with the improvement thereof is covered by the time period referred to in T.C.A. § 28–3–202 if the manufacturer observes the installation of its product during the construction.

While this holding could make the statute applicable to the case at bar, the record reflects that there is a dispute as to whether a representative of Upjohn actually observed the application of the installation. Plaintiffs allege that he did; Upjohn contends that he did not. Thus a factual dispute must be resolved in order to determine whether the statute of limitations applies and if there is any dispute as to material determinative evidence or any doubt as to the conclusions to be drawn from the entire evidence, a motion for a directed verdict should not be granted. *Stringer v. Cooper,* 486 S.W.2d 751 (Tenn. App.1972). As noted, the trial court's denial of the motion for directed verdict was based on its determination that Upjohn was merely a material supplier and not within the purview of the statute. Thus, the trial

court correctly overruled the motion for directed verdict but for the wrong reason.

■ Plaintiffs' final assertion is that a determination that T.C.A. § 28–3–202 is otherwise applicable will avail Upjohn nothing because of T.C.A. § 28–3–205(b) (1980) which provides:

> (b) The limitation hereby provided shall not be available as a defense to any person who shall have been guilty of fraud in performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying, in connection with such an improvement, or to any person who shall wrongfully conceal any such cause of action.

Plaintiffs contend that the fraud and concealment of Upjohn proven at trial and the decision of the jury in plaintiffs' favor establishes the nonavailability of T.C.A. § 28–3–202 as a defense.

Plaintiffs' substantive cause of action includes the claim for fraud and misrepresentation on the part of Upjohn. The theory of plaintiffs' pleading and proof is to the effect that Upjohn was armed with vast amounts of knowledge concerning the dangerous propensities of the insulation if it were not applied properly and buffered with the necessary thermal barrier. Plaintiffs contend that an Upjohn representative knew from his on-site observations that the application of the insulation to the MiChris building was improper, yet he remained silent and concealed this information from the plaintiffs. This theory was submitted to the jury with appropriate instructions and the jury returned a general verdict for the plaintiffs. The effect of such a general verdict is to decide each issue in favor of the plaintiff if there is material evidence to support the verdict. T.C.A. § 20–9–503 (1980); *Thoni v. Hayborn,* 37 Tenn.App. 56, 260 S.W.2d 376 (1953). In this case, there was such material evidence.

While the jury verdict established that an Upjohn representative did observe the construction of the improvement to real property and this without more would include Upjohn within the ambit of the statute, the jury's determination of the substantive claim that Upjohn was guilty of fraud and concealment precludes the finding that T.C.A. § 28–3–202 is available as a defense.

Therefore, since the statute of limitations Upjohn relied upon does not bar plaintiffs' actions, we find the first issue without merit.

2. Whether the trial court erred in admitting the evidence concerning the death of Reginald Hill.

Hill, an employee of Pridemark, died in the fire upon which plaintiffs' claims are based. A lawsuit for his wrongful death was filed but settled and dismissed prior to the trial of the cases herein. Upjohn filed a motion in limine seeking, among other things, to prevent the admission of any evidence concerning Hill's death. The trial court overruled the motion and Upjohn objected to the admission of all evidence pertaining to the death.

Upjohn contends that the evidence of Hill's death is irrelevant to any disputed issue at trial and that in any event it should have been excluded because its prejudicial effect far outweighs its probative value. Upjohn's contention embraces objections to the following: (1) references in plaintiffs' opening statement to Hill's death and to a film that would be introduced retracing his final steps; (2) the introduction into evidence of the film as related to the remarks and the opening statement; (3) testimony of various eyewitnesses, fellow workers of Hill, in which Hill's activities and death were referred to; (4) the introduction of the death certificate and the reports of the county medical examiner and a toxicologist; (5) the testimony of the toxicologist, Dr. David Stafford, concerning matters pertaining to the death of Hill and his opinion as to the cause of that death; (6) one of plaintiffs' counsel's questions to Dr. Stafford which referred to "the tragic death of Reginald Hill; " (7) a voluntary statement by a witness concerning the effects of the fire and the fact that he had ultimately attended a funeral; and (8) a part of plain-

tiffs' counsel's closing argument as follows:

> It is obvious that the loss of one life is worth more than all the sales that have been made for interiors of buildings, and if, by your verdict, you can't [sic] motivate this defendant to go out, locate, correct, warn and in such instances protect property where they have been responsible for creating hazard, then you have served this community well.

On the other hand, plaintiffs assert that the evidence of Hill's death was relevant because the timing of events during the first minute of the fire, including Hill's activities, was essential to substantiate plaintiffs' claim that the combustible characteristics of the polyurethane foam were the sole cause for the fire's rapid spread. They contend that the cause of death is also relevant because it is probative as to what materials were burning and how fast they were burning as well as to the issue of punitive damages.

Plaintiffs and Upjohn concede, and we agree, that the admissibility of this evidence should be determined by (a) whether the evidence of Hill's last activities, all of which occurred within the first minute of the fire, were relevant to explain the cause of the rapid spread of the fire; (b) whether the evidence of Hill's cause of death attributed by public officials to exposure to the combustible by-products of the polyurethane was relevant to the cause of the fire's rapid spread and (c) whether the evidence of Hill's death was relevant to the issue of punitive damages as being descriptive of the nature of the damages or hazards of the product involved.

Evidence is relevant if it tends to prove the issue or constitutes a link in the chain of proof. Its admissibility rests within the sound discretion of the trial judge who will be reversed only for abuse of that discretion. *See Strickland v. City of Lawrenceburg,* 611 S.W.2d 832 (Tenn.App.1980).

■ With regard to the relevancy arguments the record reflects that there was no dispute that the fire spread in a rapid and unabated manner and that it was accompanied by thick, dense, acrid smoke. Several Pridemark employees gave eyewitness testimony concerning the discovery of the fire and the tragic conclusion. All parties agree that the fire spread rapidly. Thus plaintiffs' contention that Hill's death was a necessary part of its proof of a rapidly spreading fire is without merit. The real issue is *what caused the rapid spread of the fire.* In response to a hypothetical question Dr. Stafford opined that Hill died from heat and the inhalation of toxic fumes from the polyurethane. This testimony pertained to the cause of Hill's death, but did not offer any proof on the issue of the cause of the rapid spread of the fire. Because of Dr. Stafford's expertise in dealing with chemicals, his testimony had some probative value in other respects, but as his testimony relates to the cause of Hill's death, it failed to be relevant to what caused the rapid spread of the fire.

As noted, Upjohn asserts that the introduction of the evidence of Hill's death is highly prejudicial and that the prejudice outweighs the probative value of the testimony if there be any probative value at all. We agree with Upjohn's assertion in this regard. What started out as a property damage action between corporations, ended up including references to wrongful death of an employee of one of the corporations. As we noted previously, the circumstances leading up to the fire and the description of the fire itself were amply proven by testimony of the witnesses and the cause of the rapid spread of the fire was adequately shown without reference to the death of Hill.

In *State v. Banks,* 564 S.W.2d 947 (Tenn. 1978), our Supreme Court established a guide for our courts in dealing with this type of evidence. Justice Brock speaking for the court said:

> But even relevant evidence should not be admitted if its prejudicial effect outweighs its probative value. Fed.R.Evid. 403; Uniform Rules of Evidence 45, *supra.*

Federal Rule 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In the explanatory note to Rule 403, "unfair prejudice" is defined by the Advisory Committee as:

"An undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."

See also *Haddad v. Kuriger*, Ky., 437 S.W.2d 524 (1968); *State v. Martinez*, 92 Idaho 183, 439 P.2d 691 (1968); *Thibodeau v. Connecticut Co.*, 139 Conn. 9, 89 A.2d 223 (1952); *Moeller v. Hauser*, 237 Minn. 368, 54 N.W.2d 639, 57 A.L.R.2d 364 (1952).

We regard this rule as one that is fair and just and strikes a reasoned balance between probative value and unfair prejudice; we approve it as a proper guide to be followed by our courts in both criminal and civil cases.

*Id.* at 951.

Certainly the death of an employee in a fire of this magnitude inserts emotions when none may have existed into a suit for damages incurred by a corporation to its property.

Finally, plaintiffs assert that the proof regarding Hill's death was competent on the issue of punitive damages because it tended to show the nature of the danger imposed by Upjohn's actions and the possible hazards of such conduct.

■ Punitive damages are intended to punish the defendant for wrongful conduct and to deter others from similar conduct in the future. The damages refer to the nature of the defendant's conduct rather than to the injury plaintiff suffered, *Breault v. Friedli*, 610 S.W.2d 134 (Tenn.App.1980), although actual damages must be found as a predicate for the recovery of punitive damages. *Allen v. Melton*, 20 Tenn.App. 387, 397, 99 S.W.2d 219, 225 (1936). In awarding punitive damages, the law blends the interests of society and the aggrieved

individual and awards such damages as will operate to deter others from like conduct. *Knoxville Traction Company v. Lane*, 103 Tenn. 376, 53 S.W. 557 (1899).

We conclude from these authorities that punitive damages, as contemplated by our law, are to punish the defendant in the interest of society for acts against the plaintiff who was damaged thereby. If the case for the wrongful death of Hill had gone to trial, the jury would have had to consider the acts of the defendant toward Hill and the damages resulting therefrom. In the case at bar, however, the evidence concerning Hill's death had no probative value in proving the nature of defendant's acts toward the plaintiffs and the resulting damages.

■ Having determined that the trial court wrongfully admitted the evidence, we must now consider the effect of this error. T.R.A.P. 36(b) provides:

(b) Effect of Error.—A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.

It is often difficult to determine the effect evidence may or may not have on a jury, and these cases prove no exception. We previously noted, however, that these cases began as suits for property damages by corporations against corporations. Thus, in all probability the cases did not involve any element of human sympathy. The injection of evidence of Hill's death into the cases involving allegations of fraud, concealment and gross neglect would seem to grab the jury's attention in a more dramatic fashion. The record does indicate that plaintiffs' counsel obviously thought this effect would materialize because he zealously insisted upon the admission of such evidence. Viewing the record as a whole and the nature of the cases involved, we feel that the admission of this evidence "more probably than not affected

the judgment." Accordingly, the case should be reversed and this cause remanded for a new trial.

Since this case is being remanded for trial we will briefly consider the remaining issues for guidance on retrial.

3. Whether plaintiffs' closing argument hereinafter set out was error requiring a mistrial on Upjohn's motion.

We quote the allegedly erroneous argument:

In a very limited number of cases the issue of punitive damages is submitted to a jury, a very limited number of cases. Under our system we must establish burden of proof to be satisfied before that question is ever even submitted to you the Jurors. It will be submitted.

■ We agree with counsel for Upjohn that this part of the closing argument was error as advising the jury of action taken by the court dealing with a matter of law. Since the case will be retried we need not consider the prejudicial effect of such an argument as this matter can be corrected on the retrial of the case.

4. The trial judge erred in instructing the jury that an award of punitive damages to the plaintiff would be a joint verdict and in entering judgment.

■ The record indicates that the trial judge properly informed the jury that the plaintiffs were separate business entities which had filed separate lawsuits for their respective compensatory damages. He explained that each plaintiff and each defendant had to be considered separately on the issues of compensatory damages and liability. With regard to the punitive damage instruction, the trial judge read and submitted to the jury a liability form that also stated:

We find for the plaintiffs against the defendant Upjohn and Company in the amount of _____ dollars as punitive damages.

Upjohn did not complain about this verdict form thus inviting a joint judgment.

Upjohn now contends that it was reversible error for the trial judge to have submitted the issue of punitive damages to the jury in the form calling for a joint verdict and in accepting such a verdict. Upjohn further asserts that T.C.A. § 25–1–104 mandates a separate verdict for each plaintiff. Plaintiffs contend that these arguments are without merit because Upjohn waived, acquiesced and invited this error.

Both plaintiffs and Upjohn rely upon *Henry County Board of Education v. Burton,* 538 S.W.2d 394 (Tenn.1976), in which plaintiffs, husband and wife, filed a single complaint seeking damages from the defendants for automobile accident injuries. In his instructions relating to compensatory damages, the *Burton* trial judge told the jurors that they could return separate verdicts or a single verdict for both parties. The jury returned a single verdict without allocation or apportionment and the plaintiffs appealed, assigning as error, among other things, the form of the judgment. The Supreme Court in affirming the trial court said:

The problem in the present case, as we see it, is one of waiver or consent, because we believe that error otherwise reversible was committed by the trial judge in the form of [the] verdict which he permitted to be returned. A new trial should properly be awarded unless the plaintiffs acquiesced in the action of the trial judge and, in effect, consented thereto.

\* \* \* \* \* \*

Accordingly, although we believe that error was committed by the trial court, and we do not approve of the practice which was followed in this case of awarding a single amount to separate personal injury claimants, we believe that the plaintiffs in the present case did invite and acquiesce in the procedure which was followed, and that they are not now in position to complain thereof.

*Id.* at 397, 398.

Applying the Supreme Court's reasoning in *Henry County* to the case at bar, we find error in the trial court's instruction

calling for a joint verdict; however, it appears that Upjohn acquiesced in the trial court's action. We think there is a more compelling reason for upholding the joint verdict in this case than in *Henry County.* Upjohn's responsibility for the judgment is exactly the same as it would have been if the jury had returned separate verdicts totalling the same amount.

In this situation we adopt Judge Carney's words in *Gilson v. Gillia,* 45 Tenn. App. 193, 321 S.W.2d 855 (1958).

> No request was made by the defendants to have the jury or the Chancellor prorate the amount of the award.... We are cited to no authority which holds that an award may not be made to plaintiffs collectively. Certainly it is too late for the defendants to raise this question after the case has been finally submitted to the jury.

321 S.W.2d at 866.

In this respect the error, if any as to defendant Upjohn, is harmless, but in any event, on retrial appropriate instructions can be given.

5. Whether the court erred in failing to charge the jury on independent intervening cause.

Upjohn's special request for instructions concerning the defense of independent intervening cause were refused by the trial court. Volumes of trial testimony indicate that there were multiple factual disputes concerning whether the acts asserted as intervening were reasonably foreseeable by Upjohn and whether the acts were normal consequences of Upjohn's actions.

We see no need to prolong this opinion by detailing the arguments of the parties asserting their respective positions since the evidence on retrial may differ from that now before us. However, the record does indicate controverted issues of material facts upon which the minds of reasonable men might differ concerning the requisites of the defense of independent intervening cause. In *Brookins v. The Round Table, Inc.,* 624 S.W.2d 547 (Tenn.1981), our Supreme Court said:

> In negligence cases, issues of proximate cause, intervening cause and contributory negligence are peculiarly issues for the trier of fact, not the court to determine. Such issues can only be decided by the court in cases where inferences from uncontroverted facts are so certain that all reasonable men, in the exercise of a free and impartial judgment, must agree upon them.

*Id.* at 550.

On retrial this matter may be handled accordingly.

6. Whether the trial judge erred in instructing the jury that Upjohn could be found liable for misrepresentation or fraud and erred in instructing the jury on special agency between Upjohn and Preston.

Upjohn does not complain about the content of the instructions to the jury under this issue but contends that there was no evidence to warrant the submission of the charge concerning fraud and misrepresentation. We disagree with Upjohn's assertion. The voluminous record contains numerous references to Upjohn's knowledge of its product and its failure to disseminate the information to those who would become users of the product. Upjohn's alleged marketing methods utilized authorized dealers or applicators such as the defendant Preston to disseminate information concerning the product and to that extent would be involved in the dealer's representations. As we have previously noted there is also evidence that an Upjohn representative was present and observed the application of the material in this particular instance. Evidence on retrial may or may not warrant instructions on fraud and misrepresentation, but in this trial it appears they were properly given.

7. Whether the trial judge erred in instructing the jury that Upjohn could be found liable for negligent testing of its product.

The instructions about which Upjohn complains are:

> The plaintiffs also asserted a number of claims of negligence against defendant

Upjohn.... The plaintiffs further claim that Upjohn failed to perform any fire tests known to the defendant Upjohn as early as 1969, tests which could have clearly demonstrated the extraordinary hazard associated with improperly protected foam on the interior of buildings and that the failure to perform such realistic, large-scale tests on the Upjohn product involved in this fire while Upjohn continued to recommend its foam to be used on the interior of buildings constitutes actionable negligence.

\* \* \* \* \* \*

The manufacturer of a product that is reasonably certain to be dangerous if negligently made has a duty to exercise reasonable care in the design, manufacture, testing and inspecting of the product and in the testing and inspecting of any competent guard [sic—should read "component part"] made by another so that the product may be safely used in the manner and for the purpose for which it was made. A failure to fulfill that duty is negligence. One who puts out as his own product a product manufactured by another has the same duty of care as that of a manufacturer.

Ordinarily, one who sells in the usual course of business a product which was made by another does not have a duty to inspect or test the product for possible defects. If, however, a seller has reason to know that the product is likely to be dangerously defective, then he has the duty to exercise reasonable care to inspect and test the product before selling it. A failure to fulfill that duty is negligence.

■■■■ Upjohn argues that there was no evidence that any failure to test its product proximately caused plaintiffs' damages. Plaintiffs maintained throughout the suit that Upjohn knew the dangers of its product. The disputed trial issue was whether Upjohn had failed to properly convey this knowledge to the purchasers. We agree with Upjohn that since there was no dispute that it was aware of the fire hazards of its product, its failure to test did

not cause plaintiffs' damages and is not an issue on which the jury should be instructed. We further conclude that the second paragraph of the above quoted instructions is not warranted by the evidence in the case while the third paragraph is not applicable to Upjohn.

8. Whether the trial judge erred in instructing the jury that Upjohn could be found liable for negligence and gross negligence for marketing its product for interior use.

■■■■ The charge complained of is as follows:

In regards to gross negligence, the plaintiffs also contend that given the knowledge and information which Upjohn had, coupled with the knowledge of twenty-five fire losses, the defendant Upjohn was negligent in even attempting to market the product CPR 485 for use on the interior of buildings. They contend that purchasers who were not knowledgeable about foam characteristics could in no way appreciate or understand the extraordinary risk.

This instruction to the jury is contrary to the evidence in the case. The record reflects that correct application of the material on building interiors was possible. The gravamen of the case before us is the failure on the part of Upjohn to adequately warn of the dangers involved in incorrect application, and to provide for the correct application of the foam. The evidence on retrial will, of course, determine the correctness of any such instruction in that trial.

9. Whether the trial judge erred in commenting upon the evidence while questioning a witness.

Upjohn asserts that in questioning co-defendant Preston, the trial judge indicated by the form of his question that he had formed an opinion and was in effect commenting on the evidence. In view of our decision in this case, we see no benefit in quoting verbatim the questions and answers complained about, but we have read

the questions and answers along with other testimony of the witness Preston and we disagree with Upjohn's assertions. Our law is clear that a trial judge shall avoid expressing his opinions to a jury in any manner concerning matters to be passed upon by the jury. *See McCay v. Mitchell*, 62 Tenn.App. 424, 463 S.W.2d 710 (1970). In the case before us it appears the judge was merely asking for clarification of the witness' testimony.

The trial judge's questions did not violate the rule and his refusal to grant a mistrial was correct.

10.   Whether the trial judge erred in admitting former testimony of a witness in another lawsuit.

■■■   Circumstances leading to this issue are stated in Upjohn's brief as follows:

Keith Coultrap was an expert witness that the plaintiffs planned to call as a witness at this trial and whose deposition was taken in that connection by Upjohn. During the course of the plaintiffs' case in chief, counsel for the plaintiffs announced that Mr. Coultrap had been hospitalized. The plaintiffs rested their case in chief without further mention of Mr. Coultrap.

During Upjohn's presentation of its case, counsel for Upjohn stated his intention to present evidence from Mr. Coultrap's deposition taken in this lawsuit. Upjohn was entitled to present this evidence under Tennessee Rule of Civil Procedure 32.01(3). Nevertheless, counsel for the plaintiffs objected to Upjohn's use of the deposition at trial. Counsel for Upjohn insisted upon its right to present those portions of the deposition that dealt with Mr. Coultrap's experiences as a polyurethane contractor from 1971 through 1977. Upjohn did agree, however, to delete portions of the Coultrap deposition that were arguably irrelevant since Mr. Coultrap had not testified for the plaintiffs (specifically, inquiries into the number of times Mr. Coultrap had testified for the plaintiffs' counsel and his compensation for such testimony).

At that point, plaintiffs' counsel proposed that Upjohn's right to present Coultrap's deposition in this case should be conditioned upon plaintiffs' introduction of testimony that Mr. Coultrap gave in an unrelated 1982 Pennsylvania lawsuit *Mt. Airy Lodge v. The Upjohn Company*. Upjohn objected to any use at this trial of the testimony from another trial involving different plaintiffs. The Trial Judge ruled that the *Mt. Airy* testimony would be admitted.

The introduction into evidence of this witness' testimony in another lawsuit was error. The general rule in this state is that former testimony as an exception to the hearsay rule may be allowed into evidence at trial, including testimony given in a prior hearing, whether a deposition, preliminary hearing or plenary trial provided the declarant is unavailable as a witness and the issues and the parties are the same. *Smith v. Tri-County Electric Membership Corporation*, 689 S.W.2d 181 (Tenn.App. 1985); *Daniels v. Combustion Engineering Inc.*, 583 S.W.2d 768 (Tenn.App.1978).

11.   Whether the trial court erred in severing Upjohn's third party claims from the trial of the original action.

In the cases at bar, Upjohn filed third party claims seeking indemnity or contribution from several defendants. The trial court entered an order "severing" the third party actions from the trial of the principal actions. Upjohn contends that this operates as a "severance" under Tenn.R.Civ.P. 21 when the trial court should have granted separate trials pursuant to Tenn.R. Civ.P. 42.02. Some text writers have elaborated on the distinction between a "severance" and "separate trial," but we see no need to prolong this opinion to discuss the finer points of such proceedings. Although the trial court used the term "sever" in its orders, it appears that what the court intended to do was to order separate trials pursuant to Tenn.R.Civ.P. 42.02 which provides:

The court for convenience or to avoid prejudice may in jury trials order a separate trial of any one or more claims,

cross-claims, counterclaims, or third-party claims, or issues on which a jury trial has been waived by all parties. For the same purposes the Court may, in nonjury trials, order a separate trial of any one or more claims, cross-claims, counterclaims, third-party claims, or issues.

To avoid any confusion the trial court should specify that separate trials are granted pursuant to Tenn.R.Civ.P. 42.02.

The third party actions filed in these cases seek indemnity or contribution and could have been filed separately after the conclusion of the principal cases. Prior to the adoption of the Tennessee Rules of Civil Procedure that would have been the appropriate method for seeking indemnity or contribution. Peculiarly in these cases, however, there appear to be issues common to the claims and defenses in both the principal and the third party actions.

The trial court has wide discretion in the conduct of its trials. *Wilson v. Maury County Board of Education*, 42 Tenn.App. 315, 302 S.W.2d 502 (1957). While we do not find that the trial court abused its discretion in ordering separate trials of the third party claims, we are of the opinion that on retrial the trial court should seriously reconsider its action in ordering separate trials. In the event the trial court maintains its present position as to separate trials, the resulting order should be made pursuant to Tenn.R.Civ.P. 42.02.

12. Whether the trial judge erred in refusing to submit special interrogatories to the jury.

Upjohn contends that the trial court abused its discretion by not submitting special interrogatories to the jury pursuant to its request. Upjohn concedes that the use of special interrogatories is a matter in the trial court's discretion pursuant to Tenn.R. Civ.P. 49, but contends the trial court abused its discretion by delegating the authority to the plaintiffs as to whether special interrogatories would be submitted. After listening to counsel's arguments, the court agreed to submit special interrogatories to the jury if the parties could agree on the language and scope of the special inter-

rogatories. This agreement did not materialize. We do not see that the trial court's refusal is an abuse of discretion and we find this issue without merit. Here again, on retrial, the judge should consider the use of special interrogatories, particularly on factual determinations involved in the statute of limitations defense.

This concludes our discussion of the issues. For the reasons stated, we reverse the judgment of the trial court and remand this case for trial consistent with this opinion. Costs are adjudged against appellee.

TOMLIN, J., and BROOKS McLEMORE, Special Judge, concur.