# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

JEAN STRAUB and PAUL STRAUB, )
                                  )
       Plaintiffs/Appellants, )    Shelby Circuit No. 70354 T.D.
                                  )
v. )
                                    )
JASON D. ROBERTS and )    Appeal No. W1998-00854-COA-R3-CV
WILLIAM J. HATCHER, )
                                    )
       Defendants/Appellees. )

**FILED**

**March 31, 2000**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

## APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
## AT MEMPHIS, TENNESSEE

### THE HONORABLE KAY ROBILIO, JUDGE

For the Plaintiffs/Appellants:

David M. Sullivan
Memphis, Tennessee

For the Defendants/Appellees:

Carol A. M. Hayden
Memphis, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCURS:

ALAN E. HIGHERS, J.

DAVID R. FARMER, J.

# OPINION

This is an automobile accident case. The plaintiff was a passenger in a car struck by the pickup truck driven by the defendant. The jury awarded the plaintiff $7,210 in damages. The jury assessed 50% of the fault to the defendant driver and 50% to the non-party driver of the plaintiff's vehicle. The trial court denied the plaintiff's motion for a new trial, but granted an additur of $6,000. The plaintiff appeals. We affirm, finding that there is material evidence to support the jury's verdict, and that the alleged errors by the trial court do not warrant a new trial.

On December 6, 1994, plaintiff Jean Straub ("Straub") was riding in a car driven by her daughter-in-law, Eugina Straub ("Eugina"). Driving south, Eugina reached an intersection and entered the left turn lane to turn east. As she began her turn, she was struck by a northbound pickup truck driven by seventeen-year-old Jason Roberts ("Jason"). Jason's younger brother, Jacob Roberts ("Jacob"), was a passenger in the pickup truck.

Jason's truck struck Eugina's car on the passenger side of the vehicle. Straub was injured in the accident. Straub sued Jason and his stepfather, William Hatcher, the title owner of the truck. She sought $125,000 in damages for pain and suffering, emotional trauma, lost earning capacity, and medical bills of almost $9,000. Straub alleged that the accident caused permanent impairment to the mobility of her neck, as well as recurrent episodes of vertigo. Straub's husband sought $25,000 for loss of consortium. Straub alleged that Jason had been speeding and had run a red light, and that his negligence caused the collision.

The Defendants denied that Jason was the cause of Straub's injury. They asserted that Eugina was at fault by turning in front of oncoming traffic, and that her fault either caused or contributed to the accident.

At trial, Eugina testified that southbound traffic at the intersection was controlled by a left-turn arrow, and that the arrow was green when she entered the intersection and began her turn. She said that, after she began to turn, she saw a red truck speeding toward her in the northbound curb lane. When she saw that the truck was not going to stop, she immediately braked. She said that Jason's truck swerved left and struck the passenger side of her car. Eugina testified that after the collision, Jason ran up to her crying out, "I'm so sorry. I'm so sorry. I was speeding. I ran the red light. I am so sorry. I am so sorry." She denied telling the Memphis police service technician ("PST officer") who investigated the accident that she had turned left on a red light, and in fact denied even talking to the PST officer at the scene of the accident.

The PST officer who responded to the accident report, James Ash ("Ash"), testified that he interviewed both Jason and Eugina at the scene of the accident. Ash said that Jason admitted that he had been speeding, and said that the light turned yellow as he approached the intersection, and then turned red, and then the accident occurred. Ash said that Eugina told him that she had been in the middle of the intersection waiting to turn left when the light turned red for her, and that after the light turned red she began her turn and was struck by Jason's truck.

Straub testified that the left-turn arrow was green when Eugina turned. Straub testified that the accident had caused her to suffer terrible neck pain.

At trial, Jason admitted that he had been speeding at the time of the accident, going 45 to 50 miles per hour on a street for which the posted speed limit is 40 miles per hour. Jason said that he was traveling north at 45 to 50 miles per hour as they approached the intersection. Jason testified that the light was green, but turned yellow as he neared the intersection. He said that he did not slow down to stop at the light because he believed he could make it through the intersection before the light turned red. He testified that when Eugina turned in front of him, he slammed on his brakes and swerved left, in an attempt to avoid a collision.

Jason maintained that he was close enough to the intersection that he could have made it through on the yellow light, had Eugina not turned in his path. Jason said that immediately after the accident he checked to make sure that his brother was all right, and then ran to Eugina's car to check on its occupants. He admitted that he told Eugina that he was sorry, and that he had been speeding, but denied having told her that he ran the red light. Jason testified that he never told anyone that he had run the red light, and that Officer Ash's recollection was mistaken.

The Plaintiff then sought to question Jason about the traffic ticket he received after the accident for disregarding the red light. Jason had signed the back of the ticket and mailed in his fine. After establishing that Jason had not appeared in court on the charge, but instead mailed in the fine, the trial court ruled evidence about the ticket inadmissible.

Jason's younger brother, Jacob, a passenger in Jason's truck the evening of the accident, also testified at trial. Jacob testified that his brother was speeding as their truck approached the intersection, and that the traffic light turned yellow before they started through the intersection. Jacob said that as they entered the intersection, Eugina Straub's car turned in front of them, his brother slammed on his brakes and swerved left, and they struck Eugina's car. He said that the light

2

had turned yellow only a few seconds before the collision but could not say what color it was at the time of impact.

Plaintiff introduced the deposition of Thomas Arnold, M.D., a physician who treated Straub after the accident. Dr. Arnold testified that Straub came to him complaining of neck pain, dizziness, and tingling in her arms and hands. He diagnosed a slipped disc in her neck, benign positional vertigo, i.e., dizziness related to the position of the head, and sensory polyneuropathy or nerve damage in her arms. Dr. Arnold opined that the vertigo and slipped disc were caused by the car accident but that the nerve damage was unrelated to the accident. Dr. Arnold testified that Straub had a slight decreased range of motion of her neck. He also testified that he had successfully treated Straub for vertigo in August 1986, and that she had not experienced vertigo since his treatment. The fact that she had had vertigo in the past, however, put her at greater risk of experiencing vertigo in the future. Overall, based on her slipped disc and vertigo, Dr. Arnold rated Straub's impairment as 7 percent of the body as a whole. Dr. Arnold acknowledged that if Straub had experienced benign positional vertigo prior to the accident it would be unlikely that the accident was the cause of the vertigo she experienced after the accident, although the accident may have exacerbated it.

The Defendants called several witnesses to testify about Straub's medical history, based on her medical records. The first was Sheila Mathis ("Mathis"), an employee of Baptist Memorial Hospital who worked in the records department of the Baptist Hospital Medical Center ("Baptist Central"). Mathis testified that she was one of the custodians of medical records for Baptist Health Care Systems and that, pursuant to subpoena, she had copied medical records on Straub and brought them to court. Over the objection of the Plaintiff's counsel, Mathis testified, based on the medical reports, that Straub had complained of neck pain before the car accident, and that a medical examination showed that Straub had "mild degenerative changes along the neck spine."

On cross-examination, Mathis stated that the medical records from which she testified were kept at Baptist Hospital East ("Baptist East"), and that she worked only at the Baptist Central location. The trial court determined that Mathis was not the proper custodian to testify regarding the records from Baptist East, and excused her as a witness.

Plaintiff's counsel asked the trial court to instruct the jury to disregard Mathis' testimony and to strike the medical reports from which she testified. The trial court agreed and asked the Plaintiff's counsel to draft an instruction. The trial court then gave the jury the instruction proposed

3

by the Plaintiff's counsel:

> The Court has determined that Ms. Sheila Mathis' testimony that she was custodian of Baptist Memorial Hospital East's medical records was erroneous. Consequently, the Court instructs you to disregard her testimony in its entirety. Her testimony is not to be given any weight by you and her testimony is hereby stricken by the Court. Exhibits 4, 5, and 6 are stricken, and the jury is to give those exhibits no weight in your deliberations.

The Defendants then called to testify the custodian of the medical records of the Ear, Nose and Throat Group in Memphis, Tennessee. Based on the Group's medical records, the witness testified that Straub had complained of vertigo in 1990, prior to her accident. On cross-examination, the witness acknowledged that the medical report merely stated that Straub complained of vertigo, and did not state that she had been diagnosed with any specific type of vertigo.

The Defendants then called a secretary for Dr. C.T. Langford, who read a letter written by Dr. Langford to Straub's former employer to support Straub's application for early retirement. In the letter, Dr. Langford stated that Straub suffered from hypertension, and said that continued employment could increase her hypertension and jeopardize her health.

At the close of proof, the Plaintiff asked for a directed verdict, arguing that there was no proof from which the jury could find either Straub or Eugina at fault. The trial court granted the Plaintiff's motion for a directed verdict regarding the Plaintiff's fault, but denied it regarding Eugina.

During closing arguments, the Plaintiff objected to defense counsel's reference to the televison shows "Dateline" and "L.A. Law," and the suggestion that the Plaintiff might be a "greedy" person "seeking the pot of gold at the end of the litigation rainbow." The trial court responded by instructing counsel for the Defendants to "forget the TV shows." Counsel for the Defendants then continued closing without further mention of television shows.

After deliberation, the jury returned a verdict in favor of the Plaintiff, and awarded her $7,210 in damages. Plaintiff's husband was awarded nothing on his loss of consortium claim. In its allocation of fault, the jury assigned 50% of the fault to Jason Roberts, and 50% to Eugina Straub. Accordingly, the trial court entered judgment against the Defendants in the amount of $3,605.

The Plaintiff then filed a Rule 50.02 motion, asking that the trial court set aside the jury verdict and order a new trial. The Plaintiff argued that the jury's finding that Eugina Straub was 50% at fault was contrary to the weight of the evidence. In the alternative, the Plaintiff asked for an additur of $45,000. The trial court denied the Plaintiff's request for a new trial, but granted an

additur of $6,000. Consequently, the Defendants were ordered to pay Straub total damages in the amount of $6,605. From this order, the Plaintiff now appeals.

On appeal, the Plaintiff raises essentially four issues: 1) Whether the trial court erred in denying the Plaintiff's motion for a directed verdict; 2) Whether the trial court erred in excluding evidence of Jason's traffic citation; 3) Whether the trial court erred in admitting evidence about the Plaintiff's medical condition prior to the accident; and 4) Whether the trial court erred in denying the motion for a new trial.

On appeal, the jury's findings of fact will be set aside only if there is no material evidence to support the jury's verdict. Tenn. R. App. P. 13(d). The trial court's conclusions of law are reviewed *de novo* upon the record, with no presumption of correctness. **See Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993).

The Plaintiff contends on appeal that Jason's negligence was the sole and proximate cause of the accident, and that the jury's finding that Eugina was at fault was against the clear weight of the evidence. Consequently, the Plaintiff argues that the trial court erred in denying the Plaintiff's motion for a directed verdict as to Eugina's fault.

In considering a motion for directed verdict, both the trial court and the reviewing court on appeal must look to all the evidence, take the strongest legitimate view of the evidence in favor of the opponent of the motion, and allow all reasonable inferences in favor of that party. If there is any doubt as to the conclusion that can be drawn from the whole evidence, the motion must be denied. **Conatser v. Clarksville Coca-Cola Bottling Co.**, 920 S.W.2d 646, 647 (Tenn. 1995); **Hurley v. Tennessee Farmers Mut. Ins. Co.**, 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995). A directed verdict cannot be sustained if there is material evidence in the record that would support a verdict for the defendant under any of the theories advanced by the defendant. **Conatser**, 920 S.W.2d at 647; **Hurley**, 922 S.W.2d at 891.

In this case, the PST officer who investigated the accident testified that immediately after the accident, Eugina told him that she had turned left after the light for southbound traffic turned red. Jason and his brother testified that their light for northbound traffic was green as they approached the intersection. Both brothers testified that the light turned yellow as they neared the intersection. Based on this evidence, the jury could reasonably conclude that Eugina turned left, in front of Jason's truck, after the traffic light for both directions of traffic turned either yellow or red, on the

5

assumption that Jason would stop his truck at the intersection. This is material evidence from which the jury could find Eugina 50% at fault. The trial court's denial of the Plaintiff's motion for a directed verdict on the issue of Eugina's fault is affirmed.

The Plaintiff also argues that the trial court erred by excluding evidence of the traffic citation Jason received for disregarding the red light. The trial court excluded evidence of the traffic citation based on *Williams v. Brown*, 860 S.W.2d 854 (Tenn. 1993). In *Williams*, the Tennessee Supreme Court concluded that the payment of a traffic fine in lieu of an appearance in court is "neither a guilty plea nor an express acknowledgment of guilt," and, therefore, "that evidence of payment of a traffic fine without contest is not admissible in a later action based on the underlying event resulting in the traffic citation." *Id.* at 856. Based on *Williams,* we affirm the trial court's exclusion of evidence regarding Jason's traffic citation.

The Plaintiff argues that the trial court committed reversible error by allowing Sheila Mathis to testify as custodian of Baptist East's medical records. When it became apparent that Mathis was not the proper custodian to testify about the records of Baptist East Hospital, counsel for the Plaintiff asked only that the jury be instructed to disregard Mathis' testimony and not consider the records from which she testified. The instruction proffered by the Plaintiff was given. The Plaintiff did not ask for a mistrial. Consequently, this objection is waived on appeal. *Perkins v. Sadler*, 826 S.W.2d 439, 442 (Tenn. Ct. App. 1991).

The Plaintiff next argues that the trial court erred by admitting evidence that Straub suffers from hypertension, asserting that this evidence had no relevance to any issue at trial. The Defendants note that Straub sought damages for lost earning capacity. Dr. Langford's letter showed that the Plaintiff had been advised to retire because of her health and therefore, had suffered no loss of earning capacity as a result of the accident.

The determination of whether evidence is relevant, and therefore admissible, is within the province of the trial court, and will be reversed by an appellate court only upon a showing that the trial court clearly abused its discretion. *Pridemark Custom Plating, Inc. v. Upjohn Co., Inc.*, 702 S.W.2d 566, 572 (Tenn. Ct. App. 1985). We find no abuse of discretion by the trial court in admitting Dr. Langford's letter into evidence.

The Plaintiff also argues that the trial court erred by allowing evidence of Straub's 1990 complaint of vertigo. The Plaintiff contends that even if the evidence is relevant, the prejudice

6

caused by the evidence outweighed its probative value under Rule 403 of the Tennessee Rules of Evidence.

"The determination of whether evidence is relevant, or, if relevant, should be excluded for one of the reasons set forth in Rule 403, addresses itself to the sound discretion of the trial court." *State v. Griffis*, 964 S.W.2d 577, 594 (Tenn. Crim. App. 1997). Therefore, the trial court's decision to admit evidence of Straub's 1990 complaint of vertigo will not be reversed unless the trial court clearly abused its discretion.

In this case, Dr. Arnold diagnosed the Plaintiff with benign positional vertigo, and opined that the accident caused the Plaintiff's vertigo. On cross-examination, Dr. Arnold acknowledged that if the Plaintiff had suffered from benign positional vertigo prior to the collision, it would be unlikely that the accident caused her vertigo. Evidence of the Plaintiff's pre-collision complaint of vertigo was relevant to whether the accident caused the vertigo for which she sought damages. The Plaintiff indicates that this evidence was unduly prejudicial because there are 18 different types of vertigo, and the Plaintiff was not diagnosed with benign positional vertigo in 1980. The Plaintiff had ample opportunity to introduce evidence of this fact. We find no abuse of discretion, and the decision of the trial court on this issue is affirmed.

The Plaintiff argues that the trial court erred by allowing into evidence portions of Dr. Arnold's deposition in which Dr. Arnold testified about the Plaintiff's physical ailments that were not caused by the car accident. The Defendants argue that these portions of Dr. Arnold's deposition demonstrated his bias toward the Plaintiff since he included charges for treatment of the Plaintiff's unrelated medical conditions on the bill that purportedly included only charges for conditions related to the accident. We find no abuse of discretion, and the decision of the trial court on this issue is affirmed.

The Plaintiff argues that in considering the Plaintiff's motion for a new trial, the trial court failed to exercise its duty as thirteenth juror to weigh the evidence and determine whether the evidence preponderated against the jury's verdict.

In considering a 60.02 motion for a new trial, the trial court's duty is to act as a thirteenth juror and to "independently weigh the evidence, and to determine whether evidence preponderates in favor of or against the jury verdict." *Loeffler v. Kjellgren*, 884 S.W.2d 463, 468-69 (Tenn. Ct. App. 1994). In this case, the trial court's order of judgment shows clearly that it independently

7

weighed the evidence and concluded that the evidence preponderated in favor of the jury's verdict.

The trial court's order denying the Plaintiff's motion for a new trial reads:

> Pending before the court is plaintiffs' motion for a new trial or in the alternative motion for additur. The court finds the jury had evidence before it from which it could have concluded that a non-party, Eugina Straub's fault could approximately be assessed at fifty percent (50%) of the total fault to be allocated. It is apparent to the court that Eugina Straub did advance into the path of the defendant's speeding pick-up truck. Accordingly, plaintiffs' motion for a new trial is DENIED.
> The court grants plaintiffs' motion for additur in the amount of $6,000.

Consequently, this issue is without merit.

The Plaintiff next argues that the trial court erred by denying the Plaintiff a new trial based on Defense counsel's alleged misconduct during trial. The Plaintiff alleges that Defense counsel's misconduct consisted of: attempting to circumvent discovery rules and statutes governing the subpoenaing of medical records by calling Mathis to testify about medical records of which she was not a custodian; making remarks in closing argument that were designed to appeal to the passion and prejudice of the jury; having her husband place undue emphasis on portions of Dr. Arnold's deposition that he read for the jury at trial; and failing to identify the medical records custodians as witnesses with knowledge of discoverable matters in Defendants' response to interrogatories.

The Plaintiff did not request a mistrial based on any of this alleged misconduct. Unless a mistrial is demanded as soon as grounds for it are known, it is waived. *Perkins v. Sadler*, 826 S.W.2d 439, 442 (Tenn. Ct. App. 1991). Moreover, a motion for a new trial pursuant to Tenn. R. Civ. P. 60.02 lies within the sound discretion of the trial court. On appeal, the scope of review is limited to whether the trial judge abused his discretion. *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993). We find no abuse of discretion, and the trial court's decision on these issues is affirmed.

The Plaintiff also alleges that Defense counsel engaged in misconduct by making inappropriate statements in closing argument. The Plaintiff alleges that counsel's references to television shows and remarks about greed were designed to inflame the passions of the jury.

Determining what arguments are permitted in closing argument is largely within the discretion of the trial court. *Davis v. Hall*, 920 S.W.2d 213, 217 (Tenn. Ct. App. 1995). "The appellate courts generally will not interfere with the discretionary action of a trial court in refusing to grant a mistrial or a new trial for misconduct in argument unless the argument is clearly

unwarranted and made purely for the purpose of appealing to passion, prejudices and sentiment which cannot be removed by sustaining the objection of opposing counsel." *Id.*

In this case, the trial court sustained the Plaintiff's objection to the remarks by counsel for the Defendants, and ordered Defense counsel to cease reference to any television shows. The Plaintiff did not request a mistrial based on these remarks. We find no error by the trial court in its denial of the Plaintiff's motion for a new trial on this ground.

The decision of the trial court is affirmed. Costs on appeal are taxed to the Appellants, Jean Straub and Paul Straub, for which execution may issue, if necessary.


_____
                    **HOLLY KIRBY LILLARD, J.**

_____
**CONCUR:**


_____
**ALAN E. HIGHERS, J.**


_____
**DAVID R. FARMER, J.**

9