IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 5, 2015 Session Heard at Memphis

## DONRIEL A. BORNE v. CELADON TRUCKING SERVICES, INC.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Shelby County**
No. CT00327310    Robert S. Weiss, Judge

No. W2013-01949-SC-R11-CV

SHARON G. LEE, J., concurring in part and dissenting in part.

I concur in the majority's decision regarding the pretrial agreement. I dissent from the majority's analysis regarding superseding cause. The trial court did not err in declining to give an instruction on superseding cause; the majority's analysis confuses causation in fact with superseding cause. Further, I dissent from the majority's analysis of the remittitur issue and its remand to the trial court. The majority, in five lengthy footnotes, attempts to defend its decision. The reasoning in this separate opinion is clearly stated; I will not debate with the majority in a series of footnotes.

Superseding Cause

One of the disputed issues for the jury was whether Mr. Borne's alleged injury would have occurred but for Celadon's negligence. Mr. Borne presented testimony that he was injured in the July 1, 2009, collision with Celadon's truck. Mr. Borne described the collision as a "hard" impact, and soon after the accident, he began receiving medical treatment. Although Mr. Borne worked for six months following the accident, he eventually stopped working based on medical advice and restrictions. At the time of trial, Mr. Borne was still receiving medical treatment and experiencing pain that significantly limited his daily activities.

At trial, Celadon contended the July 1, 2009, collision was of minimal force and was not capable of causing Mr. Borne's injury. Further, Celadon argued that Mr. Borne suffered from a pre-existing arthritic condition for which Celadon was not responsible and that other traumatic events could have caused Mr. Borne's injury, including Mr.

Borne's continued work for six months after the July 2009 collision, a vehicular accident that occurred on June 18, 2009, and a vehicular accident that occurred on April 14, 2011. Celadon requested a jury instruction on superseding cause based on Mr. Borne's continued work after the July 2009 accident and the April 2011 accident. The trial court declined to give the requested instruction. As indicated by its verdict, the jury determined that the cause in fact of Mr. Borne's injury was the July 2009 collision with Celadon's truck.

The Court of Appeals held that the trial court did not err in declining to instruct the jury on superseding cause because neither Mr. Borne's continued work after the July 2009 accident nor the April 2011 accident was a superseding cause. In this Court, Celadon relies *only* on the April 2011 accident as a superseding cause, forgoing its argument that Mr. Borne's continued work after the July 2009 accident caused his injuries. Celadon claims it was reversible error for the trial court to decline to instruct the jury on superseding cause based on the April 2011 accident.

Whether Mr. Borne's injury was caused by the collision with Celadon's truck or an accident that occurred nearly two years later is a question of causation in fact, not superseding cause. Causation in fact and proximate cause are different concepts and subject to different analyses.[1] Causation in fact refers to the "cause and effect relationship between the tortious conduct and the injury." *King v. Anderson Cnty.*, 419 S.W.3d 232, 246 (Tenn. 2013) (quoting *Kilpatrick*, 868 S.W.2d at 598) (internal quotation marks omitted). Causation in fact, or actual cause, means "the injury or harm would not have occurred 'but-for' the defendant's negligent conduct." *Id.* (quoting *Kilpatrick*, 868 S.W.2d at 598).[2] A plaintiff must prove by a preponderance of the evidence that the defendant's conduct was the cause in fact of the plaintiff's injury.[3] If a plaintiff cannot prove cause in fact, the action fails because "proof of negligence without proof of causation is nothing." *Mosley v. Metro. Gov't of Nashville & Davidson Cnty.*, 155 S.W.3d 119, 123–24 (Tenn. Ct. App. 2004) (quoting *German v. Nichopoulos*, 577 S.W.2d 197, 203 (Tenn. Ct. App. 1978), *overruled on other grounds by Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 86 (Tenn. 1999)) (internal quotation

---

[1] *Waste Mgmt., Inc. of Tenn. v. S. Cent. Bell Tel. Co.*, 15 S.W.3d 425, 430 (Tenn. Ct. App. 1997) (citing *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d 79, 83 (Tenn. 1996); *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993)); 65 C.J.S. *Negligence* § 191.

[2] *See also* 57A Am. Jur. 2d *Negligence* § 415 ("[C]ause in fact . . . means that the injury or harm would not have occurred but for the defendant's negligent conduct." (citing *Morrison v. Allen*, 338 S.W.3d 417, 438 (Tenn. 2011)); 65 C.J.S. *Negligence* § 200 ("[T]here must be proof that, but for wrongful conduct, an injury would not have occurred." (citing 65 C.J.S. *Negligence* § 207)).

[3] *King*, 419 S.W.3d at 246 (citing *Kilpatrick*, 868 S.W.2d at 598); 57A Am. Jur. 2d *Negligence* § 440 ("It is the plaintiff's burden to prove causation in fact by a preponderance of the evidence." (citing *Kilpatrick*, 868 S.W.2d at 594)).

marks omitted); *Drewry v. Cnty. of Obion*, 619 S.W.2d 397, 398 (Tenn. Ct. App. 1981), *overruled on other grounds by Seavers*, 9 S.W.3d at 86).

Proximate causation, also known as legal causation, "encompasses the whole panoply of rules that may deny liability for otherwise actionable causes of harm." *Kilpatrick*, 868 S.W.2d at 598 (quoting Joseph H. King, Jr., *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Injuries and Future Consequences*, 90 Yale L.J. 1353, 1355 n.7 (1981)). The determination to be made under proximate cause is "whether the policy of the law will extend responsibility for that negligent conduct to the consequences that have occurred." *King*, 419 S.W.3d at 246 (quoting *Kilpatrick*, 868 S.W.2d at 598). Tennessee law provides that "legal responsibility must be limited to those causes which are so closely connected with the result and are of such significance that the law is justified in imposing liability." *Id.* (quoting *Doe v. Linder Constr. Co.*, 845 S.W.2d 173 (Tenn. 1992)). Proximate cause determines the boundaries of liability. *King*, 419 S.W.3d at 246 (citing *Kilpatrick*, 868 S.W.2d at 598).

Proximate cause is "a policy decision by the judiciary to deny liability for otherwise actionable conduct." *Mosley*, 155 S.W.3d at 122 (citing *Bain v. Wells*, 936 S.W.2d 618, 625 (Tenn. 1997); *George v. Alexander*, 931 S.W.2d 517, 521 (Tenn. 1996)). The decision to deny liability under proximate causation is "based on considerations of logic, common sense, policy, precedent and 'our more or less inadequately expressed ideas of what justice demands or of what is administratively possible and convenient.'" *White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998) (quoting *Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252, 256 n.6 (Tenn. 1997)).[4]

Superseding cause is included within the proximate causation analysis.[5] Under superseding cause, a defendant is relieved from liability when a new, unforeseen, and independent cause intervenes to produce an unforeseeable result.[6] The usual explanation

---

[4] *See also Waste Mgmt.*, 15 S.W.3d at 430 (citing *Smith v. Gore*, 728 S.W.2d 738, 749 (Tenn. 1987); *Lancaster v. Montesi*, 390 S.W.2d 217, 220 (Tenn. 1965)); *see also* 65 C.J.S. *Negligence* § 188 ("[T]he applicability . . . must be determined . . . on mixed considerations of logic, common sense, justice, policy, and precedent." (citing *Wyatt v. Winnebago Indus., Inc.*, 566 S.W.2d 276, 280 (Tenn. Ct. App. 1977))).

[5] *See Davis v. McGuigan*, 325 S.W.3d 149, 160–61 (Tenn. 2010) (citing *White*, 975 S.W.2d at 529); 1 *Comparative Negligence Manual* § 1:40 (3d ed. 2017) (citing *Potter v. Ford Motor Co.*, 213 S.W.3d 264, 273–74 (Tenn. Ct. App. 2006)); 65 C.J.S. *Negligence* § 223; 3 Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, *American Law of Torts* § 11:9 (Monique C. M. Leahy ed., 2017).

[6] *See Davis*, 325 S.W.3d at 160–61 (citing *White v. Premier Med. Grp.*, 254 S.W.3d 411, 417 (Tenn. Ct. App. 2007)); 57A Am. Jur. 2d *Negligence* §§ 555, 562; 1 *Comparative Negligence Manual* § 1:40 (3d ed. 2017) (citing *Potter*, 213 S.W.3d at 273–74); 65 C.J.S. *Negligence* § 223.

is that a superseding cause "breaks the chain of legal causation between the original actor's conduct and the eventual injury." *Waste Mgmt.*, 15 S.W.3d at 432.[7]

Issues regarding causation in fact should be resolved before proximate cause issues are considered.[8] If the plaintiff cannot establish causation in fact, the case fails without ever reaching the issue of proximate cause. *See Mosley*, 155 S.W.3d at 123 (citing *Waste Mgmt.*, 15 S.W.3d at 430) ("Applying the *Waste Management* analysis described, it is seen that if causation in fact does not exist, liability does not exist, and one never reaches the issue of proximate or legal cause.") (alteration added).

Consequently, a superseding cause instruction assumes that the defendant's negligence is the cause in fact of the plaintiff's injuries. *Godbee v. Dimick*, 213 S.W.3d 865, 886–87 (Tenn. Ct. App. 2006) (quoting *Chamberland v. Roswell Osteopathic Clinic, Inc.*, 27 P.3d 1019, 1023 (N.M. Ct. App. 2001)); *see* 65 C.J.S. *Negligence* § 223. Unless the defendant's negligence is the cause in fact of the plaintiff's injury, there is nothing for subsequent independent causes to intervene and supersede. *See Godbee*, 213 S.W.3d at 886–87 (quoting *Chamberland*, 27 P.3d at 1023). "If the evidence demonstrates no more than a simple dispute over causation in fact (i.e., whether the defendant's negligence did or did not cause in fact the injuries suffered by the plaintiff), then the issue for the jury is causation alone, not [superseding] cause." *Id.* (quoting *Chamberland*, 27 P.3d at 1023) (internal quotation marks omitted). A dispute over causation in fact allows for only the standard instruction on proximate cause and does not justify a more specific instruction on superseding cause. *See id.* at 888–89.

Under certain circumstances, a defendant could argue that the plaintiff failed to prove cause in fact and that the defendant is relieved from liability by a superseding cause. Although Celadon argued both theories, the facts relied on by Celadon *only* supported an argument regarding cause in fact, not superseding cause. Therefore, the trial court did not err in declining to instruct the jury on superseding cause. Because the trial court did not instruct the jury on superseding cause, the dissent does not address whether the trial court would have erred by giving this instruction. Doing so would constitute issuing an advisory opinion; courts should not issue advisory opinions. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 192 (Tenn. 2000).

---

[7] *See Davis*, 325 S.W.3d at 160–61 (quoting *White*, 975 S.W.2d at 529); 1 *Comparative Negligence Manual* § 1:40 (citing *Potter*, 213 S.W.3d at 273–74); 65 C.J.S. *Negligence* § 223.

[8] *See Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005) ("Once it is determined that the plaintiff's injury would not have happened but for the defendants' breach of duty, the next question is whether the defendants' breach was a proximate cause of the plaintiff's injury . . . ."); *Waste Mgmt.*, 15 S.W.3d at 433; 65 C.J.S. *Negligence* §§ 192, 223.

To support its argument that the trial court erred by not instructing the jury on superseding cause, Celadon relies primarily on two cases: *Underwood v. Waterslides of Mid-America, Inc.*, 823 S.W.2d 171 (Tenn. Ct. App. 1991), *abrogated on other grounds by Chapman v. Bearfield*, 207 S.W.3d 736 (Tenn. 2006), and *Pridemark Custom Plating, Inc. v. Upjohn Co.*, 702 S.W.2d 566 (Tenn. Ct. App. 1985). Neither case supports Celadon's position. In *Underwood*, plaintiffs sued the owners, operators, sellers, suppliers, and builders of a waterslide that collapsed when twenty-one people tried to ride down it at once. The jury awarded damages to the injured plaintiffs. *Underwood*, 823 S.W.2d at 174–75. On appeal, the consulting engineer and builders of the waterslide argued that the trial court erred by not instructing the jury on superseding cause because the operator of the waterslide failed to provide adequate supervision and allowed twenty-one people to form a human chain that collapsed the waterslide, thereby superseding the engineer and builders' negligence in constructing a waterslide with potential defects. *Id.* at 180. The Court of Appeals held that the trial court erred in not giving a jury instruction on intervening cause because there was sufficient evidence that the waterslide operator failed to maintain proper control of the waterslide and that the weight on the waterslide was at least a contributing factor in its collapse. *Id.*

*Underwood* did not involve injuries that occurred years apart; rather, it involved the plaintiffs' one-time injuries and a dispute over whether the operator's negligence superseded and eliminated any liability for the engineer and builders' alleged negligent construction of the waterslide. Mr. Borne seeks compensation for only the July 1, 2009, injury; if Celadon is responsible for the July 1, 2009, injury, its liability should not be eliminated by a subsequent unrelated accident that occurred two years later.

In *Pridemark*, the owner and lessee of a factory destroyed by a fire sued the manufacturer and contractor allegedly responsible for the manufacturing and installation of highly flammable insulation in the building. *Pridemark*, 702 S.W.2d at 567–68. The jury returned a verdict against the manufacturer. *Id.* at 568. On appeal, the manufacturer argued that the trial court erred by not charging the jury on independent intervening cause. *Id.* at 569, 575. The Court of Appeals awarded the manufacturer a new trial based on the erroneous admission of evidence. *Id.* at 573–74. The Court of Appeals, in dicta, briefly considered the manufacturer's jury instruction argument and concluded there were multiple factual issues concerning whether the acts asserted as intervening causes were reasonably foreseeable by the manufacturer and were normal consequences of its actions. *Id.* at 575. The Court of Appeals did not rule as to whether it was error not to charge the jury on intervening cause, noting that the evidence on retrial may differ from the evidence in the first trial. *Id. Pridemark* offered a very limited discussion of intervening cause, no ruling on the issue, and did not involve an alleged subsequent injury as in the case before us.

The cases of *Godbee v. Dimick*, 213 S.W.3d 865 (Tenn. Ct. App. 2006), and *Pellicano v. Metropolitan Government of Nashville & Davidson County*, No.

5

M2003-00292-COA-R3-CV, 2004 WL 343951, at *1 (Tenn. Ct. App. 2004), while factually distinguishable, are nevertheless helpful to our analysis. In *Godbee*, a patient sued her surgeon for his alleged negligence in the diagnosis and treatment of her back condition. *Godbee*, 213 S.W.3d at 870. The defendant doctor had performed a partial laminectomy on the patient to alleviate disc herniations and her back pain. After the surgery, the doctor reviewed MRI results and determined the patient did not have spinal stenosis. When the patient did not improve, the doctor ordered another MRI that, according to the plaintiff's expert witness, indicated the patient had spinal stenosis. Thereafter, the doctor performed a bilateral laminectomy on the patient. After the second surgery, the patient developed arachnoiditis, a hyper-inflammation of the nerve roots, that the patient claimed was caused by the doctor's negligence. The doctor argued that the patient's arachnoiditis predated the surgeries and was caused by the pre-surgical disc herniations. After the jury ruled for the doctor, the patient appealed and contended, in part, that the trial court erred by instructing the jury on superseding cause. *Id.* at 870–71, 882. Although the Court of Appeals reversed the trial court on other grounds, it held that the trial court erred in charging the jury on superseding cause. *Id.* at 889, 897. The parties disputed whether the patient's injury was caused by the surgery or the natural progression of a pre-existing disease. *Id.* at 888. These were issues relating to causation in fact and whether "neither, either, or both may be determined to be causes-in-fact." *Id.* Therefore, the standard instruction on proximate cause was sufficient because causation in fact was the only issue in dispute, and superseding cause "does not come into play until after causation in fact has been established." *See id.* at 889 (quoting *Waste Mgmt.*, 15 S.W.3d at 432). Similarly, Celadon disputes the cause in fact of Mr. Borne's injury—not superseding cause.

In *Pellicano*, the plaintiff was diagnosed with a herniated disc after an injury at work. *Pellicano*, 2004 WL 343951, at *1. Seven weeks later, the plaintiff was involved in a low impact vehicular collision. The plaintiff stated after the collision that he was not injured. He continued to work and did not seek medical treatment until four months later. Six months after the collision, the plaintiff had surgery to repair the herniated disc. *Id.* The plaintiff sued for damages arising out of the accident. *Id.* at *2. The trial court awarded the plaintiff damages, including medical expenses related to the surgery to repair the herniated disc. The Court of Appeals reversed, finding that the evidence preponderated against the trial court's decision based, in part, on the plaintiff's doctor's equivocal testimony regarding the connection between the collision and the surgery. *Id.* at *10–11. The Court of Appeals properly framed the issue as one of causation in fact, noting this issue should be resolved before consideration of proximate cause or the allocation of fault. *Id.* at *1, *3. *Pellicano* involved two alleged injuries with different causes that occurred seven weeks apart. The case before us involves two alleged injuries with different causes that occurred two years apart. The primary issue in both cases is causation in fact—not superseding cause.

Mr. Borne had to prove that Celadon's conduct was the cause in fact of his injury. Mr. Borne presented lay and medical testimony that his injury was more likely than not caused by the collision with Celadon's truck. Celadon presented testimony that Mr. Borne's injury *could* have been caused by the April 2011 accident. The issue for the jury, therefore, was a question of causation in fact—whether all, part, or none of Mr. Borne's injury would have occurred but for the negligence of Celadon's driver.

The majority cites with approval a new definition of "superseding cause" set forth in the Restatement (Third) of Torts: Liability for Physical and Emotional Harm section 34 (2010) ("Third Restatement"). However, the adoption of the Third Restatement's definition of superseding cause was not raised, briefed, or argued by the parties. If and when the Third Restatement's definition of superseding cause is adopted in Tennessee, it should only be done after input from the parties and a careful analysis by this Court. The Third Restatement is a fairly recent promulgation by the American Law Institute; its definition of superseding cause has not been adopted previously by any court in Tennessee. Only a handful of state courts have adopted or cited with approval the Third Restatement's definition of superseding cause.[9]

Celadon's argument that the accident on April 14, 2011, caused Mr. Borne's injury raised an issue of causation in fact, not superseding cause. The jury was properly instructed on causation in fact. Therefore, the trial judge did not err in declining to instruct on superseding cause.

---

[9] *See, e.g.*, *People v. Brady*, 29 Cal. Rptr. 3d 286, 302 (Cal. Ct. App. 2005) (citing with approval); *Hayes v. Caspers, Ltd.*, 881 A.2d 428, 436 (Conn. App. Ct. 2005) (citing with approval); *Mitchell v. Cedar Rapids Cmty. Sch. Dist.*, 832 N.W.2d 689, 700, 702 (Iowa 2013) (applying Third Restatement's scope-of-liability approach adopted by Iowa courts in *Thompson v. Kaczinski*, 774 N.W.2d 829, 839 (Iowa 2009)); *Commonwealth, Transp. Cabinet, Dep't of Highways v. Babbitt*, 172 S.W.3d 786, 793 (Ky. 2005) (citing with approval); *Commonwealth v. Buckley*, 57 N.E.3d 1051, 1057 (Mass. App. Ct. 2016) (citing with approval).

With the advent of comparative fault, some commentators argue that superseding cause is an outdated principle that should no longer apply. *See, e.g.*, Michael D. Green, *The Unanticipated Ripples of Comparative Negligence: Superseding Cause in Products Liability and Beyond*, 53 S.C. L. Rev. 1103, 1123–35 (2002); David W. Robertson, *Love and Fury: Recent Radical Revisions to the Law of Comparative Fault*, 59 La. L. Rev. 175, 190 n.36 (1998); Terry Christlieb, Note, *Why Superseding Cause Analysis Should Be Abandoned*, 72 Tex. L. Rev. 161, 181–86 (1993); Kelsey L. Joyce Hooke, Comment, *Collision at Sea: The Irreconcilability of the Superseding Cause and Pure Comparative Fault Doctrines in Admiralty*, 74 Wash. L. Rev. 159, 188–89 (1999).

<u>Remittitur</u>

For many years, appellate courts have followed a well-established standard of review for a jury's award of damages that is clear, concise, and relatively easy to apply. Appellate courts, utilizing this standard of review, have served an important role in curbing runaway or excessive verdicts. The majority's decision rejects the appellate standard of review that has worked well and instead adopts a standard that is confusing, difficult to apply, and significantly restricts the authority of appellate courts to review damage awards.

*Appellate Standard of Review and Application*

Under our established law, the standard of review used by the Court of Appeals depends on whether the trial judge has agreed or disagreed with the jury's verdict on damages. *See Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 422 (Tenn. 2013); *West v. Epiphany Salon & Day Spa, LLC*, No. E2016-01860-COA-R3-CV, 2017 WL 1502827, at *5–6 (Tenn. Ct. App. Apr. 25, 2017); *Bradley v. Bishop*, No. W2016-01668-COA-R3-CV, 2017 WL 1192112, at *15–16 (Tenn. Ct. App. Mar. 30, 2017) (quoting *Meals*, 417 S.W.3d at 422–23); *Kempson v. Casey*, No. E2015-02184-COA-R3-CV, 2016 WL 6499283, at *3 (Tenn. Ct. App. Nov. 2, 2016) (quoting *Meals*, 417 S.W.3d at 422–23); *Martin v. Perma-Chink Sys., Inc.*, No. E2015-01466-COA-R3-CV, 2016 WL 3586949, at *11–12 (Tenn. Ct. App. June 27, 2016) (quoting *Meals*, 417 S.W.3d at 422–23); *Goree v. United Parcel Serv., Inc.*, 490 S.W.3d 413, 444 (Tenn. Ct. App. 2015) (quoting *Meals*, 417 S.W.3d at 420), *appeal denied* (Mar. 23, 2016); *State ex rel. Tenn. Dep't of Transp. v. Jones*, No. M2014-00151-COA-R3-CV, 2015 WL 3929584, at *4, *7 (Tenn. Ct. App. June 25, 2015) (citing *Meals*, 417 S.W.3d at 422); *Barnes v. Saulsberry*, No. W2014-00646-COA-R3-CV, 2014 WL 7335795, at *5 (Tenn. Ct. App. Dec. 23, 2014) (citing *Meals*, 417 S.W.3d at 423); *Bonner v. Deyo*, No. W2014-00763-COA-R3-CV, 2014 WL 6873058, at *4 (Tenn. Ct. App. Dec. 5, 2014) (citing *Meals*, 417 S.W.3d at 419, 420); *Pyle v. Mullins*, No. E2012-02502-COA-R3-CV, 2013 WL 6181956, at *4–5 (Tenn. Ct. App. Nov. 25, 2013) (quoting *Meals*, 417 S.W.3d at 422–23).

When a trial judge agrees with the jury's verdict and approves it in the judge's role as thirteenth juror, the Court of Appeals' review of the verdict is limited to a review of the record to determine whether the verdict is supported by material evidence. *Meals*, 417 S.W.3d at 422 (citing *Poole v. Kroger Co.*, 604 S.W.2d 52, 54 (Tenn. 1980)). This deferential standard is appropriate because the jury and the trial court have seen and heard the witnesses, observed their demeanor, and weighed their testimony alongside all other evidence presented in the trial. *See Coffey v. Fayette Tubular Prods.*, 929 S.W.2d 326, 331 n.2 (Tenn. 1996); *Foster v. Amcon Int'l, Inc.*, 621 S.W.2d 142, 143–44 (Tenn. 1981) (quoting *Cumberland Tel. & Tel. Co. v. Smithwick*, 79 S.W. 803, 804 (Tenn. 1904)). Material evidence is "evidence material to the question in controversy, which

must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case." *Meals*, 417 S.W.3d at 422 (quoting *Knoxville Traction Co. v. Brown*, 89 S.W. 319, 321 (Tenn. 1905)) (internal quotation marks omitted). Under this standard, the jury's award will be upheld if there is any material evidence to support it; it is irrelevant whether the weight of the evidence preponderates against the award. *See id.* at 423 (quoting *Hohenberg Bros. v. Mo. Pac. R.R.*, 586 S.W.2d 117, 119–20 (Tenn. Ct. App. 1979)).

If the trial judge disagrees with the jury's assessment of damages and suggests a remittitur, the Court of Appeals applies the preponderance of the evidence standard of review. *See Coffey*, 929 S.W.2d at 331 (quoting the preponderance of the evidence standard under Tenn. R. App. P. 13(d)) (citing Tenn. Code Ann. § 20-10-102(b); *Thrailkill v. Patterson*, 879 S.W.2d 836, 841 (Tenn. 1994)). Under the preponderance of the evidence standard of review, the Court of Appeals reviews the record de novo, accompanied by a presumption of correctness of the trial court's findings, to determine if the evidence in the record preponderates against the trial court's suggested remittitur. *Id.*; *see Meals*, 417 S.W.3d at 422 (quoting Tenn. Code Ann. § 20-10-102(b)) (citing Tenn. R. App. P. 13(d)). This is a less deferential standard of review than the material evidence standard. *Coffey*, 929 S.W.2d at 331 n.2. A fact is supported by a preponderance of the evidence when the fact is more probably true than not. *Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 341 (Tenn. 2005). Unlike review under the material evidence standard, a trial judge's remittitur can be reversed if the weight of the evidence preponderates against the remittitur. *See Meals*, 417 S.W.3d at 422–23; *Coffey*, 929 S.W.2d at 331 (quoting Tenn. R. App. P. 13(d)).

The Court of Appeals, based on its review of the evidence, may suggest a further remittitur under the applicable standard of review. Tenn. Code Ann. § 20-10-103(a);[10] *Meals*, 417 S.W.3d at 422; *Coffey*, 929 S.W.2d at 331.

---

[10] Tennessee Code Annotated section 20-10-103 provides:

(a) If the judgment of the trial court with regard to a remittitur is affirmed in the court of appeals, so that a party is required to make a remittitur or suffer a new trial, as in the judgment of the trial court, or if, by the opinion of the court of appeals, a further or a larger remittitur is required of the party in whose favor the verdict was rendered, or if after the case was tried in the lower court by the trial judge without a jury, or if after the case was tried in the lower court with a jury and no remittitur was suggested by the trial judge, a remittitur is first suggested or required in the court of appeals, on penalty of granting a new trial, then in each and all of these events the party in whose favor the verdict or judgment has been rendered may make the remittitur under protest in the court of appeals, and take the case, by application for permission to appeal, for review upon that point, to the supreme court.

(b) If, in the opinion of the supreme court, the verdict should not have been reduced, and the court of appeals was in error in affirming the action of the trial court as to the

The majority's remittitur analysis is troublesome. First, the appellate standard of review for a trial judge's remittitur of an award of damages is well established; it is not an issue of first impression. *See Meals*, 417 S.W.3d at 422; *Coffey*, 929 S.W.2d at 331. In *Coffey*, the jury awarded the plaintiff $30,000 in compensatory damages and $1,500,000 in punitive damages. *Id.* at 327. The trial court approved the award of compensatory damages, reduced the punitive damages award to $500,000, and awarded plaintiff $20,000 as front pay. *Id.* The Court of Appeals affirmed the compensatory damages award, remitted the punitive damage award to $150,000, and vacated the front pay award. *Id.* at 328. The Supreme Court reversed the Court of Appeals' further remittitur of the punitive damages award, reversed the Court of Appeals' decision to vacate the front pay award, and reinstated the award of the trial court. *Id.* at 326–27. In reviewing the decision of the Court of Appeals to further reduce the award of punitive damages from $1,500,000 to $500,000, the Supreme Court affirmed the authority of the appellate courts to suggest a remittitur, though recognizing that the authority is "naturally more circumscribed than that possessed by the trial courts." *Id.* at 331. Tennessee Code Annotated section 20-10-102(b) provides that when the trial court suggests a remittitur, the Court of Appeals applies the standard of review applicable to decisions of trial courts sitting without a jury. *Id.* at 331 (citing *Thrailkill*, 879 S.W.2d at 841 (Tenn. 1994)). This standard, set forth in Tennessee Rule of Appellate Procedure 13(d), provides that "findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). Applying this standard of review, the Supreme Court concluded that the evidence did not preponderate against the trial court's remittitur of the punitive damage award to $500,000. *Coffey*, 929 S.W.2d at 331. Significantly, the Supreme Court focused on whether the evidence preponderated against the trial court's suggested remittitur and did not consider whether the Court of Appeals' suggested remittitur was supported by material evidence. *Id.*

The dissent's reasoning is consistent with our previous holding in *Coffey*. As in the case before us, the trial court in *Coffey* suggested a remittitur and the Court of Appeals suggested an additional remittitur. Following *Coffey*, the dissent determines whether the evidence preponderates against the trial court's remittitur. Under this established standard, when a trial judge has suggested a remittitur of a jury's award of damages, the Court of Appeals should determine whether the evidence preponderates against the trial court's decision. If it does not, the Court of Appeals should affirm the trial court's

---

remittitur, or if the court of appeals was, itself, in error in suggesting a remittitur for the first time in that court, or in suggesting a further or larger remittitur than that suggested in the trial court, and if the judgment is otherwise correct, the case shall be reversed to that extent, and judgment shall be rendered in the supreme court for the full amount originally awarded by the jury or the trial judge sitting without a jury, as the case may be.

Tenn. Code Ann. § 20-10-103.

decision. It follows that if the evidence preponderates in favor of a further reduction in the award of damages as remitted by the trial court, the Court of Appeals may suggest a further remittitur. This straightforward, uncomplicated procedure for reviewing a trial court's remittitur of a jury's award has worked well for many years. Contrary to *Coffey*, the majority holds that an appellate court cannot suggest an additional remittitur unless there is no material evidence to support the trial court's decision "regardless of whether the trial court has already suggested a remittitur."

Second, contrary to existing practice, the majority allows an appellate court to suggest a remittitur *only* "if it finds that the award exceeds the uppermost boundary of the range of reasonableness under the evidence presented, i.e., 'the amount beyond which there is no evidence, upon any reasonable view of the case, to support the verdict.'" The majority goes further and prohibits an appellate court from granting "its *own* further remittitur *unless* the award, even as remitted by the trial court, is more than the upper limit of the range of reasonableness, i.e., not supported by material evidence." This new standard unnecessarily restricts the authority of the Court of Appeals to adjust a verdict based on its review of the evidence and the appropriate standard of review.

Finally, after a protracted analysis, the majority declines to review the trial court's decision and sends the parties back to the trial court for yet another hearing because the majority cannot ascertain the reason the trial court suggested the remittitur. This is problematic for several reasons.

First, the majority should have determined initially if the record was sufficient for its review, and if not, it should have remanded the case with no further analysis of the issue. The majority's lengthy discussion of the standard of review is purely advisory given its decision not to consider the trial court's remittitur and to remand the case. Courts should not render advisory opinions. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 192 (Tenn. 2000) (citing *Super Flea Mkt. of Chattanooga, Inc. v. Olsen*, 677 S.W.2d 449, 451 (Tenn. 1984)). Under the justiciability doctrines that dictate exercising judicial restraint, "[w]hat we say in an opinion should be confined to, and limited by, the facts of the case under consideration and the questions necessary for a decision of that case." *Staten v. State*, 232 S.W.2d 18, 19 (Tenn. 1950). The majority overreached by going beyond the point that was necessary for a decision. *See id.* The majority's advisory remittitur analysis is dicta and not binding authority or precedent within the rule of stare decisis. *See id.* (citing 21 C.J.S. *Courts* § 190).

Second, the reason given by the trial court for the suggested remittitur was sufficient for appellate review. The trial court's order stated that the jury's verdict was excessive and that remittitur was appropriate. Ideally, trial judges should provide as much information as possible to explain their decisions. However, appellate courts are experienced in reviewing records to determine if the evidence preponderates against the

11

decision reached by a trial court and can do so without making independent credibility determinations. A remand was not necessary in this case.

Finally, it has been over eight years since Mr. Borne's July 1, 2009, accident. There is only a $5,000 difference between the remittiturs suggested by the trial court and the Court of Appeals. This case should not be sent back to the trial court for another proceeding—one that can then be appealed. Eight years is long enough. The parties deserve finality and an end to this litigation.

On loss of earning capacity, the trial court disagreed with the jury's verdict and suggested a remitted award of $1,100,000. Loss of earning capacity refers to the difference between an injured person's earning capacity before and after an injury. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999). The jury heard evidence that Mr. Borne suffered a permanent back injury in the July 2009 accident and because of that injury could only do, at most, sedentary work. Dr. Cates and Dr. Gamboa testified that, based on Mr. Borne's physical limitations and prolonged work absence since the accident, Mr. Borne would likely never work again. Dr. Gamboa testified that Mr. Borne's loss of earning capacity, reduced to present value, was $1,334,647. Celadon disputed Dr. Gamboa's testimony and presented the testimony of Ms. Carla Seyler, a rehabilitation counselor, who opined that Mr. Borne could return to his regular work or find work comparable in pay. Celadon presented no evidence suggesting an alternative, lower dollar figure than that calculated by Dr. Gamboa. As acknowledged by the majority, the jury's awards "indicate that the jury credited the testimony of Mr. Borne's witnesses and did not credit the testimony of the witnesses presented by Celadon." The evidence preponderates against the jury's award of $1,455,000 because there is no evidence in the record to support any loss of earning capacity $120,353 greater than the amount calculated by Dr. Gamboa. The evidence also preponderates against the trial court's remittitur to $1,100,000, as nothing in the record supports a reduction of Dr. Gamboa's calculation by $234,647. Absent any other quantitative evidence, the jury's award for loss of earning capacity should be remitted to $1,334,647.

On the award for pain and suffering, the trial court disagreed with the jury's verdict and suggested a remittitur from $750,000 to $500,000. Awards for pain and suffering compensate a person for physical and mental discomforts caused by an injury. *Meals*, 417 S.W.3d at 420 (citing *Overstreet*, 4 S.W.3d at 715). These discomforts include "anguish, distress, fear, humiliation, grief, shame, or worry" that may accompany an injury. *Overstreet*, 4 S.W.3d at 715. Mr. Borne and his wife testified about the severity of his pain and how it affects his daily activities. Dr. Dietze's January 2010 evaluation of Mr. Borne indicated that Mr. Borne had constant neck pain, severe headaches, back pain, and intermittent leg pains. Dr. Dietze explained that future treatment could reduce, but not eliminate, Mr. Borne's pain. Dr. Glorioso, who examined Mr. Borne in March 2012, determined that Mr. Borne suffered an annular fibrosis tear, which would produce pain.

12

The evidence does not preponderate against the trial court's suggested remittitur of the award for pain and suffering to $500,000.

On the award for permanent impairment, the trial court disagreed with the jury's verdict and suggested a remittitur of the permanent impairment award from $750,000 to $100,000. An award for permanent impairment compensates a person for "an injury from which the [person] cannot completely recover." *Overstreet*, 4 S.W.3d at 715 (citing *Jordan v. Bero*, 210 S.E.2d 618, 630 (W. Va. 1974)). Permanent impairment awards can "relate to earning capacity, pain, impairment of physical function or loss of the use of a body part." *Id.* (citing *Yates v. Bradley*, 396 S.W.2d 735, 738 (Mo. Ct. App. 1965)). Dr. Dietze assigned Mr. Borne a 10% permanent impairment rating based on his lower back injury. The jury's award of damages for loss of earning capacity, pain and suffering, and loss of enjoyment of life do not supplant an award for permanent impairment, but there is some overlap. *See id.* (citing *Thompson v. Nat'l R.R. Passenger Corp.*, 621 F.2d 814, 824 (6th Cir. 1980)). The evidence does not preponderate against the trial judge's decision to suggest a remittitur for the award for permanent impairment to $100,000.

On the award for loss of enjoyment of life, the trial judge disagreed with the jury's award and suggested a remittitur of the loss of enjoyment of life award from $750,000 to $400,000. An award for loss of enjoyment of life compensates a person for the impairment placed on his or her ability to enjoy the normal pleasures of life. *Meals*, 417 S.W.3d at 420 (citing *Lang v. Nissan N. Am., Inc.*, 170 S.W.3d 564, 571–72 (Tenn. 2005)). This damages award "relates to daily life activities that are common to most people." *Overstreet*, 4 S.W.3d at 716. It can also compensate a plaintiff for the loss of uncommon individual pursuits or talents. Mr. Borne testified about his active lifestyle before his injury and how his injury affected his ability to engage in recreational activities and chores. His wife confirmed that Mr. Borne was no longer able to assist his mother as he could before the accident and that his lifestyle had changed. Based on a review of the evidence, Mr. Borne suffered a substantial loss of enjoyment of life. Although Mr. Borne's limitations are significant, particularly for a person of his age, his limitations do not totally deprive him of all the common activities of life he enjoyed before his injury. The evidence does not preponderate against the trial judge's suggested remittitur to $400,000 for loss of enjoyment of life.

Accordingly, Mr. Borne is entitled to a remitted award of $2,334,647, which is a 37% decrease in the jury's award. This amount of reduction does not impermissibly destroy the verdict. *See Johnson v. Nunis*, 383 S.W.3d 122, 135 (Tenn. Ct. App. 2012) (holding suggested remittitur of 43% did not totally destroy jury's award); *Grandstaff v. Hawks*, 36 S.W.3d 482, 498–99 (Tenn. Ct. App. 2000) (upholding remittitur of 46%); *Steele v. Ft. Sanders Anesthesia Grp., P.C.*, 897 S.W.2d 270, 283 (Tenn. Ct. App. 1994) (upholding remittitur reducing jury's verdict by 40%).

For the reasons stated herein, I concur in part and dissent in part.


_____
SHARON G. LEE, JUSTICE